Ronald MILNE, Individually and on behalf of all other persons similarly situated, Plaintiff,

and

Douglas Streeter et al., Intervenor-Plaintiffs,

v.

Leonard BERMAN, Individually and as Commissioner of the Westchester County Department of Social Services, and Abe Lavine, Individually and as Commissioner of the New York State Department of Social Services, Defendants,

and

George E. Boisvert, Individually and as Commissioner of the Ontario County Department of Social Services, Intervenor-Defendants.

No. 73 Civ. 5397.

United States District Court,
S. D. New York.

Nov. 11, 1974.

Gerald A. Norlander, Mount Vernon, N. Y. (The Legal Aid Society of Westchester County, Mount Vernon, N. Y., Martin A. Schwartz, White Plains, Catherine E. Cronin, New Rochelle, and Hilary Sohmer, Yorkers, N. Y., Legal Aid Society of Westchester County, of counsel), for plaintiffs.

Gerald A. McIntyre, Corning, N. Y. (Monroe County Legal Assistance Corp., Flood Disaster Relief Project), for intervenor-plaintiffs.

Amy Juviler, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., of counsel), for defendant Lavine.

Richard W. McAtamney, White Plains, N. Y. (Harry Lott, Westchester County Atty.), for defendant Berman.

Harrison S. Downs, Canandaigua, N. Y., for intervenor-defendant.

Before OAKES, Circuit Judge, and BONSAL and WYATT, District Judges.

## OPINION

OAKES, Circuit Judge:

The named plaintiff and intervenor plaintiffs, welfare recipients, herein collectively "plaintiffs," seek on behalf of themselves and others similarly situated, declaratory relief, injunctive relief, and damages against the Commissioner of the New York State Department of Social Services and the Commissioner of the Westchester County Department of Social Services. Plaintiffs claim that a New York welfare statute, N.Y.Soc. Serv.Law § 131(10) (McKinney's Consol.Laws, § 55 Supp.1973), and a regulation of the New York State Department of Social Services promulgated pursuant thereto, 18 N.Y.C.R.R. § 385.7,[1] violate

---

1. A 1974 amendment to the New York Social Services Law, N.Y.Laws 1974, ch. 621, § 2, renumbered the provisions challenged in this action to N.Y.Soc.Serv.Law § 131(11) (McKinney supp.1974), although no change was made in the language.

18 N.Y.C.R.R. § 385.7 provides as follows:

(a). A person who (1) voluntarily terminates employment or reduces his earning capacity for the purpose of qualifying for assistance or a larger amount thereof, or (2) without good cause fails or refuses to undergo a necessary medical examination or treatment, or to accept referral to and participate in a vocational rehabilitation or training program, including the work incentive program, or refuses to accept referral to and work in employment, including work relief, in which he is able to engage, shall be:

(1). disqualified from receiving assistance for thirty (30) days thereafter and until such time as he is willing to comply with the requirements of this Part; except that

(2). an applicant for or recipient of HR who voluntarily terminated employment or reduced his earning capacity shall be disqualified from receiving assistance for seventy-five (75) days thereafter and until such time as he is willing to comply with the requirements of this Part.

(b). Any person who applies for HR or requests an increase in his grant, within seventy-five (75) days after voluntarily terminating employment or reducing his earning capacity or similarly within thirty (30) days for ADC, shall be deemed to have voluntarily terminated employment or reduced his earning capacity for the purpose of qualifying for such assistance or larger amount thereof in the absence of evidence to the contrary supplied by such person.

the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. The statute and regulation disqualify from receipt of assistance for 75 days persons who voluntarily terminate their employment or reduce their earning capacity for the purpose of qualifying for Home Relief or Aid to Families with Dependent Children. The claims of plaintiffs, as later more fully discussed, are specifically directed to a further provision of the statute and regulation which states that a person who applies for assistance within 75 days after voluntarily terminating his employment or reducing his earning capacity shall "be deemed" to have done so "for the purpose of qualifying for such assistance or a larger amount thereof, in the absence of evidence to the contrary supplied by such person."

Jurisdiction of this court is based upon 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 since plaintiffs' complaint alleges a substantial claim involving the denial by defendants, acting under color of state law, of rights guaranteed by the fourteenth amendment to the United States Constitution. Declaratory relief is sought pursuant to 28 U.S.C. § 2201, injunctive relief under 28 U.S.C. § 2202 and compensatory and punitive damages under 42 U.S.C. § 1983. *See* Hagans v. Lavine, 415 U.S. 528, 534–543, 94 S.Ct. 1372, 1378–1382, 39 L.Ed.2d 577 (1974).

Because plaintiffs seek to enjoin the enforcement of a state statute, N.Y. Soc.Serv.Law § 131(10) (McKinney Supp.1973), on the ground that it is contrary to the Constitution of the United States, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284.

## I.

There are before the court motions from three separate movants: plaintiffs, intervenors and defendant Lavine. The first motions to be considered will be those by plaintiffs (1) for an order determining that the action may be maintained as a class action (Fed.R.Civ.P. 23(c)(1)), and (2) for "final summary judgment in favor of plaintiffs for the declaratory and injunctive relief prayed for in paragraphs (D), (E) and (F) of the Wherefore Clause of the Amended Complaint" (Fed.R.Civ.P. 56). We shall first consider the summary judgment motion and later treat the class action motion.

### A. *Summary judgment.*

Section 131(10) of the New York Social Services Law provides as follows:

Any person who voluntarily terminated his employment or voluntarily reduced his earning capacity for the purpose of qualifying for home relief or aid to dependent children or a larger amount thereof shall be disqualified from receiving such assistance for seventy-five days from such termination or reduction, unless otherwise required by federal law or regulation. Any person who applies for home relief or aid to dependent children or requests an increase in his grant within seventy-five days after voluntarily terminating his employment or reducing his earning capacity shall, unless otherwise required by federal law or regulation, be deemed to have voluntarily terminated his employment or reduced his earning capacity for the purpose of qualifying for such assistance or a larger amount thereof, *in the absence of evidence to the contrary supplied by such person.*

(Emphasis added.)

Plaintiffs make three basic arguments:

1. The statutory presumption of a wrongful intent to obtain welfare benefits is irrational and thus violates the due process clause because there is a logically insufficient connection between provable facts (that an applicant volun-

---

While subparagraph (a)(2) facially establishes a conclusive presumption, subparagraph (b) appears to modify it by making the pre- sumption rebuttable. It can be argued that the regulation is internally inconsistent.

tarily terminated his employment or reduced his earning capacity) and the presumed fact (that he did so for the purpose of qualifying for assistance or a larger amount thereof);

2. The challenged statute operates conclusively to presume essential facts in violation of the due process clause because plaintiffs are not afforded timely hearings—they have no opportunity to rebut the presumption of the statute and regulations at the time they apply for assistance and, by the time the State actually holds a hearing at which rebuttal evidence can be introduced and renders a final decision, the 75 days referred to in the statute have expired; and

3. The statute violates the equal protection clause because it arbitrarily burdens the plaintiffs' class with a presumption of ill motive—other applicants for public assistance being entitled to apply and have their eligibility assessed free of any negative presumption.

Since we agree with the plaintiffs on their first point, it is unnecessary for us at this stage to reach the second or the third.

On its face, the challenged statute provides that a person who applies for public assistance within 75 days after the voluntary termination of his employment is presumed to have terminated his employment "for the purpose of qualifying for . . . assistance . . .," in the absence of evidence to the contrary supplied by such person." The regulation in question in subparagraph (b) simply restates this.

▇▇▇▇ The statute creates a rebuttable presumption that an applicant terminated his employment with a wrongful purpose that justifies a 75-day hiatus before public assistance begins. A legislative presumption cannot stand, however, "when it is entirely arbitrary, or creates an invidious discrimination, or operates to deprive a party of a reasonable opportunity to present the pertinent facts in his defense." Bandini Petroleum Co. v. Superior Court, 284 U.S.

8, 19, 52 S.Ct. 103, 107, 76 L.Ed. 136 (1931) (holding that there was a "manifest connection" between the proven fact, blowing, release or escape of natural gas, and the presumed fact, unreasonable waste). A statutory presumption is not arbitrary only if "it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969) (presumption of knowledge that marijuana was illegally imported), following Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) (the possession of a firearm and ammunition presumptive evidence that the firearm or ammunition was transported or received in violation of the Federal Firearms Act). Accord, United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965) (possession, custody or control of still, presumed by statute from presence at site unless defendant explains presence violates due process clause). Thus, if there is a logical nexus between the proven fact and the presumed fact, the statutory presumption can be upheld. Bandini Petroleum Co. v. Superior Court, supra; Mobile, Jackson & Kansas City Railroad Co. v. Turnipseed, 219 U.S. 35, 43–44, 31 S.Ct. 136, 55 L.Ed. 78 (1910). But where such a connection is lacking, due process is violated. United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S. Ct. 2832, 37 L.Ed.2d 767 (1973) (food stamps); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (resident tuition); Owens v. Roberts, 377 F.Supp. 45 (M.D.Fla.1974) (three-judge court) (statute relating to transfer of assets as exclusion from welfare eligibility creates rebuttable but irrational presumption that such transfer was for the purpose of becoming eligible for welfare assistance); DeKalb Real Estate Board, Inc. v. Chairman and Board of Commissioners of Roads, 372 F.Supp. 748, 753–754 (N.D.Ga.1973) (posting of sign by real estate broker

improperly creates prima facie case of intentional "block-busting").

■ We hold that the statutory rebuttable presumption is irrational and in violation of the due process clause because there is an insufficient connection between the known fact, that is, application for public assistance within 75 days of an applicant's termination of employment, and the fact presumed by the statute, that is, that the applicant terminated his employment for the purpose of qualifying for public assistance.

Plaintiffs here are all applicants for Home Relief,[2] even though the challenged statute also encompasses applicants for Aid to Families with Dependent Children (AFDC), 42 U.S.C. § 601 et seq. For present purposes, we perceive no constitutional difference between financial aid received under the federally assisted AFDC and the New York state and local government program of Home Relief.

The amount of the governmental benefit here involved as Home Relief—exclusive of the limited amount of shelter allowance, said to be $3 per day—is $84 a month for one person in a household,

$134 for two, $179 for three, $231 for four, $284 for five, and $329 for six, with each additional eligible needy person in the household being entitled to an additional allowance of $45 monthly. N.Y.Soc.Serv.Law § 131–a(3) (McKinney Supp.1973). The New York City Human Resources Administration 1972 Annual Report indicates that in that year 142,123 persons were receiving Home Relief in New York City, including 60,531 children, and that the average monthly grant for 66,751 cases was $158.41 or $74.40 per person. On the strength of these sums, we think it cannot be assumed that any substantial number of people would terminate their employment in order to receive assistance. See Rothstein v. Wyman, 303 F. Supp. 339, 348–349 (S.D.N.Y.1969), vacated and remanded on other grounds, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970).[3]

Any number of reasons for terminating employment exist—desire for advancement, problems of health, family problems, transportation problems, personality conflicts, working conditions, and perhaps simply basic discontent with a job, to mention a few.[4] Indeed,

2. Persons eligible for assistance in the Home Relief category established pursuant to § 158 of the New York Social Services Law include:

Any person unable to provide for himself, or who is unable to secure support from a legally responsible relative, who is not receiving needed assistance or care under other provisions of this chapter, or from other sources, shall be eligible for home relief. However, a person who shall be eligible for aid to dependent children according to the provisions of title ten of this article shall be granted aid to dependent children and while receiving such aid shall not be eligible for home relief.

N.Y.Soc.Serv.Law § 158(a) (McKinney Supp. 1973). Examples of persons eligible for Home Relief would be needy adults who are not 65 years of age, blind or disabled. So, too, if a father were working 100 hours a month so as to make the family ineligible for ADC, but his earnings were not enough to support the family, the family would get Home Relief.

3. Moreover, at least in view of the recent United States Supreme Court decision in

New York State Dep't of Soc. Serv. v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), upholding New York State's work rules (against the general attack of preemption), and hence requiring compliance therewith as a condition of eligibility for assistance, N.Y.Soc.Serv.Law § 131(4), it is not reasonable to presume that currently employed persons would terminate their employment to attempt to avoid work.

4. In order to maintain a clear record, plaintiff Milne resigned his employment of 17 years' standing as a security guard at Columbia University after he had been charged with alleged misconduct. Plaintiff Streeter did not report for work at Lifesavers, Inc., when the company instituted a new rule that required people to shave their beards after being advised that he could not use a mask in place of shaving his beard. After obtaining new employment as an orderly in a nursing home, he became ill and was unable to call his new employer. He was later told that his employment was terminated. Intervenor Lee's employment was terminated because of allegedly excessive absences, but it

the New York City Human Resources Administration 1972 Annual Report states that as many as 23 per cent of the applicants for Home Relief in 1967 left their prior employment due to illness. *Id.* at 62. There may also be numerous reasons why a person who terminates his employment subsequently becomes impoverished and has to resort to a request for public assistance—general economic conditions, a decline in jobs available in a particular industry, health, or failure to receive an anticipated new position. Plaintiff Milne, for example, became needy when his employment insurance benefits were delayed for about two months as the result of an erroneous initial disqualification. Thus we view the statutory presumption compelling an inference that plaintiffs left their employment to obtain Home Relief arbitrary, unreasonable and in violation of due process.

Beyond this, while there may be individual exceptions to the contrary, we do not think it can be stated as a general rule, as the statutory presumption would have it, that poor people do not have the same desire to work and to obtain the fruits of work as the non-poor.

As stated in Work in America, Report of a Special Task Force to the Secretary of Health, Education and Welfare (MIT Press 1973), at 176:

> Underneath the resentment and the frustration, and giving rise to them, are a host of unverified assumptions about the character and composition of the welfare population: most poor people don't want to work; most people on welfare are black; welfare

mothers have babies to increase their welfare benefits; people on welfare live well and easy; most people on welfare want to be on welfare; etc.

> Every one of these assumptions is demonstrably false as a generalization and is true only in the occasional particular. The facts are that most poor people are not on welfare and the majority of poor people not only want to work, but do work, year round and full time; black families, though over represented, make up less than half of the AFDC caseload; the average monthly payment for a recipient on AFDC is $49.60; most mothers on AFDC do want to work—it is not difficult to add to the factual side of this misunderstood issue.

> . . . [T]hese false stereotypes of poor people, black people and AFDC families are widely held by the general public.

*See also* Irelan, Low Income Life Styles, U. S. Department of Health, Education and Welfare, Social and Rehabilitation Service, Office of Research and Demonstration (1967) at 5.

In short, the statutory inference that members of the plaintiffs' class leave their employment to obtain Home Relief is not based upon known facts and experience. Under the cases that we have cited, the statute is therefore unconstitutional in creating a presumption not sustainable in fact.

The State argues, of course, that while the statute creates a presumption it is by definition rebuttable [5] and is not burdened by any special standard of proof. The legislature may, the argument runs,

---

is not clear that he did indeed terminate voluntarily.

5. In practice, however, this "rebuttable" presumption becomes irrebuttable. *See* Owens v. Roberts, 377 F.Supp. 45 (M.D.Fla.1974) (three-judge court). Once a person has been denied Home Relief, he may refute the statutory presumption at a subsequent hearing. Plaintiffs' affidavits indicate that the hearing is normally scheduled three to four weeks after it is requested. Under existing procedures, defendants then have up to 60

days to render a decision. *See* Nelson v. Sugarman, 361 F.Supp. 1132 (S.D.N.Y.1971). Quite obviously, a determination of whether the statutory presumption has been rebutted is totally meaningless when it occurs after the 75 day waiting period. This Catch-22 approach to procedural due process is evidenced in the record by the case of intervenor Le·. He was denied emergency relief on January 31, 1974. On February 5, 1974, he requested a hearing. The hearing was held on April 4, 1974, after the statutory 75 day sanction had run.

rationally intend to deter persons from leaving employment in the expectation of obtaining public assistance, encourage people to be self-sufficient, reduce the unnecessary invasion of the public fisc and allocate the finite public resources for welfare to persons unable to support themselves. Agreement with all of these points, however, validates only the first sentence of § 131(10); the arguments do not justify the presumption operative so as to impute bad motive in *all* cases. The State points out that the disqualification is only for 75 days, but to the hungry 75 days is sufficient time in which to starve.[6]

In addition, the State argues that since the motive for terminating employment is within the knowledge of the applicant alone it is reasonable for him to bear the risk of nonpersuasion, citing 9 J. Wigmore, Evidence § 2486, at 275 (3d Ed. 1940). But as Wigmore himself points out, placing the burden of proof (or the risk of nonpersuasion) on the party who has "peculiar means of knowledge" "furnishes no universal working rule; if it did, then the plaintiff in an action for defamation charging him to be living in adultery should be required to prove that he is lawfully married." *Id.* What we are concerned with here is a matter of fairness and experience, resolving itself ultimately into a question of policy. In the situation before this court, those persons to whom the presumption is directed are typically the least capable to employ the means to rebut the presumption. This can be best shown by the fact that § 131(10) was applied to several of the intervenors notwithstanding little or no indication that leaving their employment was in any

meanful sense "voluntary," let alone for the purpose of receiving assistance. *See* note 4, *supra.* To require these persons to prove their innocent motives for terminating employment is effectively to deny them all chances of obtaining the benefits which they seek.

The State relies both on San Antonio Ind. School District v. Rodriguez, 411 U.S. 1, 43–44, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), and Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L. Ed.2d 491 (1970), for the proposition that legislative classifications involving questions of economic and social policy must be given due credit whether we are talking about welfare benefits or the cost of public education. Both *Rodriguez* and *Dandridge*, however, involve the equal protection clause and its limitations, answering negatively whether or not strict scrutiny would apply so as to require the State to justify its particular law by showing a "compelling State interest." We do not reach the equal protection argument, nor need we do so since what we are here concerned with is an invalid presumption as a matter of due process. The State has cited us to no case which would support the presumption here involved, nor does it attempt to answer the "Brandeis-brief" points made by the plaintiffs and, to a certain extent, relied upon by us above. Only recently, in any event, in a suit brought by Cynthia Hagans et al. against the same defendant here, the Supreme Court held that neither *Dandridge* nor *Rodriguez* could be read "to suspend the operation of the Equal Protection Clause in the field of social welfare." Hagans v. Lavine, 415 U.S. 528, 539, 94 S.Ct. 1372, 1380 (1974) (also

---

**6.** In this regard the answer of defendant Lavine to plaintiff's interrogatory number 5 is not insignificant. The question was:

State whether temporary or emergency assistance is granted under Section 133 of the New York Social Services Law, or under any other provision of law or regulation, to needy persons disqualified from receiving assistance under Section 131(10) of the New York Social Services Law and/or 18 N.Y.C.R.R. § 385.7, pending de-

cisions after "Fair Hearings" requested by such persons . . . .

The answer given was:

Temporary emergency assistance under § 133 of the Social Services Act is available by its terms only "pending completion of an investigation;" and thus is unavailable after the local agency has denied assistance, whether that denial is based on § 131(10) or any other provision of the Law . . . .

holding that "recouping emergency rent payments from future welfare disbursements . . . [thereby depriving] needy children because of parental fault, was [not] so 'patently rational' as to require no meaningful consideration" by the courts). The question remains what form of relief will the court give and to whom?

B. *Class action.*

 Plaintiffs ask that it be determined that the action may be maintained as a class action. As we view it, the requirements of Rule 23(b)(2) are met as to a class action. The prerequisites of Rule 23(a) are satisfied since the class is so numerous that joinder of all members is impractical; there is a question of law common to the class, *viz.*, whether the rebuttable presumption is rational and in accord with due process; the claims of the representative parties are typical of the claims of the class; and, represented by the Legal Aid Society, as they are, the representative parties will fairly and adequately protect the interests of the class. This being true, we also find that the defendants have acted or refused to act on grounds generally applicable to the class, *viz.*, on the basis that the statute is rational and constitutional. We therefore declare that the class is composed of all individuals who have been or may hereafter be disentitled to Home Relief on the basis of the statutory presumption of Social Services Law § 131(10) and its supporting regulations.[7]

We declare the second sentence of § 131(10) and the supporting regulations unconstitutional insofar as they impose on Home Relief and AFDC applicants the burden of proving that their voluntary termination of employment was not "for the purpose of qualifying for Home Relief or aid to dependent children, or a larger amount thereof," and we hereby order that the defendants be and they are hereby enjoined from enforcing the provisions of N.Y.Soc.Serv.Law § 131(10) (McKinney Supp.1973) and 18 N.Y.C.R.R. § 385.7 in that regard.[8]

## II.

There is also before the court a motion by Anthony Brownlee and Ethel Reid for an order permitting them to intervene as parties plaintiff. They cite Fed.R.Civ.P. 23 and 24.

 We do not find any response to this motion by defendants but at oral argument counsel for these proposed intervenors stated that, in light of the permitted intervention of the Beverlys and the determination by the State in their case, the reason for any intervention by Brownlee and Reid had largely disappeared. Moreover, these proposed intervenors are presumably members of the class as already defined. As such they may, if so advised, "enter an appearance through . . . counsel." Fed.R.Civ.P. 23(c)(2)(C). There is no reason for them to intervene, and the motion is denied.

## III.

There is also before the Court a motion by defendant Lavine for an order granting judgment for defendants "insofar as the complaint claims that Social Services Law § 131(10) is unconstitu-

---

7. More specifically, the members of the class are those needy persons residing in New York State who have applied for Home Relief or Aid to Dependent Children within 75 days after voluntarily terminating their employment and who have been, or may be, disqualified from receiving such assistance for any period due to the enforcement and application by defendants of the second sentence of N.Y.Soc.Serv.Law § 131(10) (McKinney Supp.1973) and regulations issued thereunder.

8. Any questions of interpretation of this order or of the order establishing the class, other than constitutional questions, as well as of the assessment of damages, may be heard by Judge Wyatt, acting individually. *See* Rosado v. Wyman, 397 U.S. 397, 402–403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Public Service Comm'n v. Brashear Freight Lines, 312 U.S. 621, 625, 61 S.Ct. 784, 85 L.Ed. 1083 (1941); Hamilton v. Nakai, 453 F.2d 152, 160–161 (9th Cir. 1971), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972).

tional" (citing Fed.R.Civ.P. 12(c)) or in the alternative for summary judgment to the same effect (citing Fed.R.Civ.P. 56(b)). In view of our decision on the motion by plaintiffs, this motion by defendant Lavine must be, and is, denied.

Settle an order or orders.