# LAVINE, COMMISSIONER, DEPARTMENT OF SOCIAL SERVICES OF NEW YORK v. MILNE ET AL.

No. 74–1137.   Argued December 2, 1975—Decided March 3, 1976

WHITE, J., delivered the opinion of the Court, in which all Members joined except STEVENS, J., who took no part in the consideration or decision of the case.

*Amy Juviler,* Assistant Attorney General of New York, argued the cause for appellant. With her on the briefs were *Louis J. Lefkowitz,* Attorney General, and *Samuel A. Hirshowitz,* First Assistant Attorney General.

*Gerald A. Norlander* argued the cause for appellees *pro hac vice.* With him on the brief was *Martin A. Schwartz.*

MR. JUSTICE WHITE delivered the opinion of the Court.

A New York welfare statute, N. Y. Soc. Serv. Law § 131 (11) (Supp. 1975),[1] disqualifies from receipt of

---

[1] This law was formerly numbered N. Y. Soc. Serv. Law § 131 (10) (Supp. 1973). The law was renumbered without change in language by a 1974 amendment to the New York Social Services Law, N. Y. Laws 1974, c. 621, § 2.

welfare for 75 days anyone who voluntarily terminates his employment or reduces his earning capacity for the purpose of qualifying for Home Relief or Aid to Families with Dependent Children. A further provision— that at issue in this case—states that a person who applies for assistance within 75 days after voluntarily terminating his employment or reducing his earning capacity shall be "deemed" to have done so "for the purpose of qualifying for such assistance or a larger amount thereof, in the absence of evidence to the contrary supplied by such person." The question raised by this appeal from the judgment of a three-judge court is whether this "presumption" denies due process of law.

Appellee Milne and the appellee intervenors are all applicants for New York Home Relief—a residual category of aid for needy individuals unable to qualify for other types of state or federal relief.[2] In addition to meeting substantive financial eligibility requirements, see, e. g., 18 NYCRR §§ 352.27, 352.28, Home Relief applicants must meet the requirements of N. Y. Soc. Serv. Law § 131 (11) (Supp. 1975) and 18 NYCRR § 385.7 promulgated pursuant thereto. Section 131 (11) provides:

> "Any person who voluntarily terminated his employment or voluntarily reduced his earning capacity for the purpose of qualifying for home relief or aid to dependent children or a larger amount thereof shall be disqualified from receiving such assistance for seventy-five days from such termination or reduction, unless otherwise required by federal law or

---

[2] See N. Y. Soc. Serv. Law § 158 (a) (Supp. 1975), which provides in part:

"Any person unable to provide for himself, or who is unable to secure support from a legally responsible relative, who is not receiving needed assistance or care under other provisions of this chapter, or from other sources, shall be eligible for home relief."

regulation. Any person who applies for home relief or aid to dependent children or requests an increase in his grant within seventy-five days after voluntarily terminating his employment or reducing his earning capacity shall, unless otherwise required by federal law or regulation, be deemed to have voluntarily terminated his employment or reduced his earning capacity for the purpose of qualifying for such assistance or a larger amount thereof, in the absence of evidence to the contrary supplied by such person." [3]

---

[3] Title 18 NYCRR § 385.7 provides:

"(a) A person who: (1) voluntarily terminates employment or reduces his earning capacity for the purpose of qualifying for assistance or a larger amount thereof; or (2) without good cause fails or refuses to undergo a necessary medical examination or treatment; or (3) is required under this Part to receive manpower services and certification and without good cause fails or refuses to accept manpower services and certification; or (4) is required under this Part to pick up his check semi-monthly at the State Employment Service and without good cause fails or refuses to do so; or (5) without good cause fails or refuses to accept referral to and participate in a vocational rehabilitation program,

"shall be disqualified from receiving assistance for 30 days thereafter and until such time as he is willing to comply with the requirements of this Part, except that an applicant for or recipient of HR who voluntarily terminated employment or reduced his earning capacity shall be disqualified from receiving assistance for 75 days thereafter and until such time as he is willing to comply with the requirements of this Part.

"(b) Any person who applies for HR or requests an increase in his grant, within 75 days after voluntarily terminating employment or reducing his earning capacity or similarly within 30 days for ADC, shall be deemed to have voluntarily terminated employment or reduced his earning capacity for the purpose of qualifying for such or larger amount thereof in the absence of evidence to the contrary supplied by such person.

"(c) In the event a person is subject at the same time to the requirements of this Part and the requirements of the WIN program,

Each of the appellees was denied relief on the ground that his voluntary cessation of employment was "for the purpose of qualifying" for Home Relief; each was therefore barred from receiving aid for 75 days.

Contending that this statute and regulation violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment, appellee Milne brought a class suit in the District Court seeking declaratory and injunctive relief and damages against the Commissioner of the New York State Department of Social Services and the Commissioner of the Westchester County Department of Social Services. Jurisdiction was predicated upon 28 U. S. C. § 1343 (3) and 42 U. S. C. § 1983. Since appellees sought an injunction against the enforcement of a state statute on the ground of its unconstitutionality, a three-judge court was convened pursuant to 28 U. S. C. §§ 2281, 2284.

Upon cross-motions for summary judgment the three-judge court certified the class and held that the second sentence of § 131 (11) and the supporting provision of 18 NYCRR § 385.7 were unconstitutional.[4] Injunctive relief followed.[5] The court found that § 131 (11) cre-

the requirements of the WIN program shall take priority, and where a sanction is required to be imposed against a person under this Part and the WIN requirements, the WIN sanction shall be imposed."

[4] The opinion below is reported sub nom. Milne v. Berman, 384 F. Supp. 206 (SDNY 1974) (three-judge court).

[5] The Court remanded the question of damages to the single-judge court. Id., at 213 n. 8.

The court below enjoined enforcement of § 131 (11) and 18 NYCRR § 385.7 with respect not only to Home Relief applicants, but also to applicants for Aid to Families with Dependent Children, despite the fact that no applicants for AFDC were before the court. Both appellant and appellees agree, though for different reasons, that the court below erred in adjudicating the constitutionality of the presumption as applied to AFDC applicants. Our disposition of this case obviates any need to pass on this issue.

ated a "rebuttable presumption" that an applicant who voluntarily terminated his employment did so for a wrongful purpose. Relying upon decisions of this Court holding that presumptions are permissible unless they are unreasonable, arbitrary, or invidiously discriminatory, see, *e. g., Bandini Petroleum Co.* v. *Superior Court,* 284 U. S. 8 (1931); *Leary* v. *United States,* 395 U. S. 6 (1969); *Tot* v. *United States,* 319 U. S. 463 (1943), the court held the rebuttable presumption irrational in violation of the Due Process Clause. "[T]here is an insufficient connection between the known fact, that is, application for public assistance within 75 days of an applicant's termination of employment, and the fact presumed by the statute, that is, that the applicant terminated his employment for the purpose of qualifying for public assistance." [6] First, it found that the limits of relief were so low that no substantial number of people would leave work merely to obtain welfare benefits. Second, it determined that the poor have "the same desire to work and to obtain the fruits of work as the non-poor." Although the court recognized that the presumption could be rebutted, it found that the fair-hearing procedure of New York took so long—frequently in excess of 75 days—that it was "meaningless" in that even a determination favorable to the applicant would usually come after the 75-day penalty period had passed.

Appellant Lavine, the Commissioner of the New York State Department of Social Services, appealed pursuant to 28 U. S. C. § 1253, and we noted probable jurisdiction, 422 U. S. 1054 (1975). We reverse.

As with any other welfare scheme, New York Home Relief imposes a host of requirements; and as is the case when applying for most governmental benefits, applicants for Home Relief bear the burden of showing their eligibil-

---

[6] 384 F. Supp., at 210.

ity in all respects. See, *e. g.*, 18 NYCRR §§ 351.1 (b) (2)ii, 351.6, 351.8, and 370.4 (a).[7]  An applicant may not earn income or hold assets that exceed minimal levels. See 18 NYCRR §§ 352.16, 352.22, 352.28. He may be required in certain circumstances to dispose of any equity in his house, N. Y. Soc. Serv. Law §§ 104, 360 (1966 and Supp. 1975); 18 NYCRR § 352.27, or to sell his automobile, 18 NYCRR §§ 352.15 (d), 352.28 (b).  If assistance is initially denied, the applicant may reapply on the basis of new evidence or may invoke his right to have his eligibility reviewed in a full administrative hearing.  18 NYCRR §§ 358.4–358.5.  To the requirements found elsewhere in the New York welfare statutes and regulations, the first sentence of § 131 (11) imposes an additional qualification: applicants who voluntarily terminate their employment with the purpose of obtaining Home Relief are ineligible to receive such benefits for 75 days.  No challenge to this provision was raised or entertained in the court below.[8]

The second sentence of § 131 (11), at issue here, provides that a person who applies for benefits within 75 days after the voluntary cessation of his employment is "deemed" to have quit "for the purpose of qualifying" for benefits, "in the absence of evidence to the contrary supplied by such person."  Although the District Court found this to be an unconstitutional "rebuttable presumption," the sole purpose of the provision is to indicate that, as with other eligibility requirements, the applicant rather than the State must establish that he did not leave employment for the purpose of qualifying

---

[7] Section 370.4 (a), *e. g.*, provides in part that:

"Insofar as practicable, responsibility shall be placed upon the applicant for home relief to provide verified information concerning his previous maintenance, loss of income and the extent and duration of current need."

[8] See n. 9, *infra*.

for benefits. The provision carries with it no procedural consequence; it shifts to the applicant neither the burden of going forward nor the burden of proof, for he appears to carry the burden from the outset.

The offending sentence could be interpreted as a rather circumlocutory direction to welfare authorities to employ a standardized inference that if the Home Relief applicant supplies no information on the issue, he will be presumed to have quit his job to obtain welfare benefits. However, such an instruction would be superfluous for the obvious reason that the failure of an applicant to prove an essential element of eligibility will always result in the denial of benefits, much as the failure of a tort or contract plaintiff to prove an essential element of his case will always result in a nonsuit. The only "rebuttable presumption"—if, indeed, it can be so called—at work here is the normal assumption that an applicant is not entitled to benefits unless and until he proves his eligibility.

Despite the rebuttable presumption aura that the second sentence of § 131 (11) radiates, it merely makes absolutely clear the fact that the applicant bears the burden of proof on this issue, as he does on all others. And since appellees do not object to the substantive requirement that Home Relief applicants must be free of the impermissible benefit-seeking motive,[9] their underly-

---

[9] Nor could the constitutionality of this substantive requirement be seriously questioned. Welfare benefits are not a fundamental right, and neither the State nor Federal Government is under any sort of constitutional obligation to guarantee minimum levels of support. *Dandridge* v. *Williams,* 397 U. S. 471 (1970). A provision denying benefits to those who quit their jobs to obtain relief is a perfectly legitimate and reasonable legislative response to the risk that the availability of welfare benefits might undermine the incentive to work.

Since nothing is conclusively presumed against the applicant, who

ing complaint may be that the burden of proof on this issue has been unfairly placed on welfare applicants rather than on the State.

Where the burden of proof lies on a given issue is, of course, rarely without consequence and frequently may be dispositive to the outcome of the litigation or application. It may be that establishing the absence of an illicit motive—as § 131 (11) requires appellees to do—is difficult, although as appellant argues, an applicant's motive should be best known by the applicant himself. However that may be, it is not for us to resolve the question of where the burden ought to lie on this issue. Outside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment.[10]

is clearly required to prove his eligibility if he is to receive relief, this Court's prior cases dealing with so-called irrebuttable presumptions are not in point. See, e. g., *United States Department of Agriculture* v. *Murry,* 413 U. S. 508 (1973); *Vlandis* v. *Kline,* 412 U. S. 441 (1973).

Also wide of the mark are those cases such as *Western & Atlantic R. Co.* v. *Henderson,* 279 U. S. 639, 644 (1929), which invalidated statutory "rebuttable presumptions" in the civil area for lack of rational connection between the ultimate fact presumed and the fact actually placed in evidence. Without examining whether such cases would today be decided as they were, it is evident that they involved easing the burden of proof of one party or shifting it to another. Here, as we have said, no easing or shifting takes place. Section 131 (11) places and leaves the burden of proof on the applicant from the outset.

[10] The cases from the criminal law relied on by the District Court, see, e. g., *Leary* v. *United States,* 395 U. S. 6 (1969); *Tot* v. *United States,* 319 U. S. 463 (1943), are not in point; they reflect the standard rule that the State *does* bear the burden of proving criminal guilt, *Mullaney* v. *Wilbur,* 421 U. S. 684 (1975); *In re Winship,* 397 U. S. 358 (1970), and that statutory presumptions aimed at assisting in that burden must satisfy certain standards of reliability indicated in the cases. See, e. g., *Turner* v. *United States,* 396 U. S.

In both their brief and during oral argument, appellees made much of the fact that their only real opportunity to rebut the "presumption" comes at a hearing the decision of which need not be handed down until 90 days from the date the hearing was requested by the applicant. See 18 NYCRR § 358.18. Because even a decision favorable to the applicant may be issued more than 15 days after the end of the 75-day waiting period when the applicant's motive in quitting his job is no longer relevant, appellees claim the hearing procedure is meaningless. Thus, they contend that a hearing must be held prior to the imposition of the 75-day "sanction." Brief for Appellees 96. There are at least two answers to their contention.

First, the State's procedure in ascertaining the applicant's purpose in quitting his job is no different from its procedure in determining any of the other substantive requirements for eligibility. An applicant visits the local agency, is informed of the eligibility criteria, and in response to questions posited by the local official is afforded an opportunity to demonstrate his eligibility. 18 NYCRR § 351.1. The answers to these questions determine whether the applicant receives Home Relief. If an adverse determination is made, the applicant has the right to appeal and to receive a full hearing. 18 NYCRR §§ 358.4, 358.5. Certainly nothing in the Constitution requires that benefits be initiated prior to the determination of an applicant's qualifications at an adjudicatory hearing. Second, even if it is true that an inordinately large number of Home Relief applicants are initially denied benefits incorrectly because of a false evaluation of their motives in resigning jobs, this in no

398 (1970). These cases are not helpful where the burden is, as it may be, placed on the applicant for Home Relief.

way places in doubt the constitutionality of the application procedure. The Fourteenth Amendment does not guarantee that all decisions by state officials will be correct, and New York would seem to have no incentive to deny benefits wrongfully. If on appeal the initial decision to deny benefits is overturned, payments retroactive to the date of application appear to be required. 18 NYCRR § 351.8. Each wrongful decision that is successfully appealed gains the State no substantive advantage and, indeed, costs the State by way of procedural waste.

Appellees cite much data that suggest that the poor no more than the wealthy quit jobs to obtain welfare benefits. Their argument that Home Relief benefits are so small—about $3.10 per day,[11] not including shelter allowance[12]—that no one would be tempted to leave a job to receive them has force. It is also asserted that the practical difficulty in satisfactorily proving one's state of mind frequently leads to the incorrect denial of benefits to qualified individuals. Even so, and even assuming, *arguendo,* that the burden of § 131 (11) on the industrious indigent far outweighs any conceivable gain to the State from screening out the indolent few, New York nevertheless prefers its chosen course; and it is not for this Court to assay the wisdom of that determination. The purpose of § 131 (11) is permissible, and the procedure for fulfilling that purpose, far from being unconstitutional, is one conventionally applied to applicants for governmental benefits.

For the reasons stated herein, the judgment of the

---

[11] N. Y. Soc. Serv. Law § 131–a (Supp. 1975).

[12] Shelter allowances are provided on an "as paid" basis, up to maximums established in each welfare district. See 18 NYCRR § 352.3.

District Court is reversed, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.