■ In the Matter of THEOTIES RUCKER, Petitioner, v BARBARA BLUM, as Commissioner of New York State Department of Social Services, et al., Respondents. — Determination unanimously confirmed and petition dismissed, without costs. Memorandum: In this CPLR article 78 proceeding petitioner challenges a determination of respondent Barbara Blum, Commissioner of the New York State Department of Social Services, made after a fair hearing, which affirmed a determination of the Onondaga Department of Social Services which disqualified petitioner from receiving home relief for 75 days on the ground that he caused his own dismissal from employment in order to qualify for public assistance. The Social Services Law (Social Services Law, § 131, subd 10) and implementing regulation (18 NYCRR 385.8 [c]) creates a rebuttable presumption that a person who applies for relief within 75 days of voluntarily terminating his employment or reducing his earning capacity, terminated his employment or reduced his earning capacity for the purpose of obtaining public assistance. The presumption is triggered by a finding that the welfare applicant "voluntarily terminated his employment or voluntarily reduced his earning capacity" (Social Services Law, § 131, subd 10), which the Department of Social Services interprets to include persons, such as petitioner,

who have been found to have voluntarily caused their own dismissal from employment. Testimony at the fair hearing established that petitioner's employment had been terminated due to his "absenteeism, tardiness and calling in late". Petitioner testified that he was discharged because he could not "make it to work how he [employer] wanted me to". Petitioner claims that the record does not establish that he quit his job, that his employment was involuntarily terminated, and that he was not disqualified from receiving public assistance. Respondent Blum contends that petitioner by his voluntary actions caused his own dismissal from employment for the purpose of receiving public assistance and was thereby rendered ineligible for public assistance for a period of 75 days after the termination of his employment. It is well settled that an interpretation given a statute by the administering agency "if not irrational or unreasonable, should be upheld" (*Matter of Howard v Wyman,* 28 NY2d 434, 438). The issue to be resolved, therefore, is whether the interpretation given to the phrase "voluntarily terminated his employment or voluntarily reduced his earning capacity" (Social Services Law, § 131, subd 10) by the Department of Social Services is rational and reasonable. The United States Supreme Court has upheld the constitutionality of subdivision 10 of section 131 of the Social Services Law (*Lavine v Milne,* 424 US 577). In so holding, the court construed this section as imposing an eligibility requirement upon welfare applicants. "[T]he sole purpose of the provision is to indicate that, as with other eligibility requirements, the applicant rather than the State must establish that he did not leave employment for the purpose of qualifying for benefits" (*Lavine v Milne, supra,* pp 583-584). It is this absence of an "impermissible benefit-seeking motive," according to the court, which lies at the heart of the eligibility requirement imposed upon welfare applicants by this provision (*Lavine v Milne, supra,* p 584). This broad interpretation of the statute finds support in its legislative history. Former Governor Rockefeller, in recommending to the Legislature a broad program of welfare reform of which this statute was part, said that the proposed statute was intended to deny welfare benefits to an employable individual who "refuses a job he or she is able to perform" (NY Legis Ann, 1971, p 531). His memorandum in support of the bill said that it "removes any potential incentive for persons who are working to voluntarily end their employment or reduce their earnings without good cause in order to receive or increase their welfare payments" (NY Legis Ann, 1971, pp 305-306). Indeed, upon approval of the statute, he said that it was designed "to deter gainfully employed persons from leaving their jobs in order to obtain public assistance" and to create "an incentive for persons to remain employed" (NY Legis Ann, 1971, p 588; see, also, *Matter of Barie v Lavine,* 48 AD2d 36, 39, affd 40 NY2d 565). We conclude that the purpose of subdivision 10 of section 131 of the Social Services Law is not simply to penalize people who quit their jobs in order to obtain welfare benefits but to deter people from leaving their jobs to obtain welfare benefits, a purpose which clearly encompasses within it a person, like petitioner, who is found to have voluntarily caused his dismissal from employment. The intent of such a person may be to obtain welfare benefits, just as the intent of a person who quits his job may be to obtain those benefits. It is, therefore, not irrational or unreasonable for the Department of Social Services to require persons who voluntarily caused their dismissal from employment to demonstrate that they do not have a "benefit-seeking" motive for leaving their employment, the same as the department requires persons who quit their jobs to demonstrate the absence of this motive (*Matter of Bode v Blum,* 81 AD2d 989, mot for lv to app den 54 NY2d 604). Such persons are merely required to establish that they did not have an "impermissible benefit-seeking motive" when they left their job

(*Lavine v Milne,* 424 US 577, 584, *supra*). The Department of Social Services interpretation of subdivision 10 of section 131 of the Social Services Law is rational and consistent with the manifestation of legislative intent. It is a "reasonable exercise of discretion by the department in effectuating the purpose and intent of section 131 of the Social Services Law" and strikes "a balance between the interests of recipients of public assistance and those of the State which must allocate limited welfare funds among those most in need of aid" (*Matter of Barie v Lavine,* 40 NY2d 565, 568-569, *supra*). There is substantial evidence on the entire record to support respondents' determination that, in accordance with its interpretation of the statute, petitioner voluntarily terminated his employment. (Article 78 proceeding transferred by order of Onondaga Supreme Court, Lynch, JJ.) Present — Dillon, P. J., Simons, Hancock, Jr., Denman and Schnepp, JJ.