In the Matter of MARK GILBERT et al., Petitioners, v BARBARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Third Department, December 9, 1982

APPEARANCES OF COUNSEL

*Edward Lindner* of counsel (*Van Zwisohn* and *Bernard Chohen* with him on the brief), for petitioners.

*Robert Abrams, Attorney-General* (*Diane DeFurio Foody* and *Alan W. Rubenstein* of counsel), for respondents.

OPINION OF THE COURT

YESAWICH, JR., J.

Petitioners, along with their child, had been recipients of Aid to Dependent Children (ADC) when, on or about October 31, 1980, it came to the attention of the Saratoga County Department of Social Services, through a local newspaper article, that Mrs. Gilbert had been charged with grand larceny for allegedly selling typewriters she had rented from IBM. An investigator for the department discovered that Mrs. Gilbert had cashed a check, dated October 14, 1980, for $800, presumably given to her in

payment for a typewriter. Because the Gilberts had neglected to apprise the local agency of the receipt of any income which might affect their continuing eligibility for benefits as is required by 18 NYCRR 351.1 and 351.2, on November 16, 1980, the local agency sent the Gilberts a notice of intent to discontinue their public assistance; assigned as a ground for doing so was the agency's inability to determine the Gilberts' financial eligibility. A fair hearing was then requested. Pursuant to 18 NYCRR 358.8 (c) (1), ADC benefits were continued until December 31, 1980, when the Gilberts' case was closed. In the interim, between the mailing of the notice to discontinue and the fair hearing, held on January 27, 1981, petitioners declined to avail themselves of an opportunity to confer with agency officials concerning their case. Instead, on December 30, 1980, they applied for Emergency Assistance for Family benefits; these were denied because Mrs. Gilbert, fearing that any answer she gave might incriminate her in the typewriter sale scheme which was under criminal investigation at the time, refused to answer questions pertaining to the $800 check. Subsequently, however, Mr. Gilbert and the Gilbert child were provided with public assistance.

After the fair hearing, where only denial of ADC benefits was at issue, the respondent commissioner affirmed the local agency's actions, noting that Mrs. Gilbert's lack of cooperation in revealing her financial status contributed to the inability of the department to establish her fitness for assistance. The cardinal issue presented is whether discontinuance of the Gilberts' ADC benefits, because Mrs. Gilbert exercised her privilege against self incrimination when she resisted discussing the $800 check, represented an unconstitutional penalty. It is also urged that the decision to terminate benefits for the period between November 16 and December 31, 1980 was improper because it was not supported by substantial evidence.

At the outset, we note that the case has not been rendered moot by Mrs. Gilbert's February 21, 1981 guilty plea to grand larceny charges stemming from the typewriter sale. The propriety of the decision to discontinue ADC benefits on December 31, 1980, because Mrs. Gilbert failed

to provide information respecting the $800 check, remains a viable issue.

Recipients of public assistance are obliged to furnish complete information regarding "those factors which affect eligibility" (18 NYCRR 351.1). They have the burden of establishing every aspect of their eligibility (*Lavine v Milne,* 424 US 577). Inasmuch as a failure on their part to come forward with statutorily exacted information would make it virtually impossible to correctly administer the public assistance programs, their co-operation is imperative. Whether, as petitioners contend, this statutorily imposed self-reporting requirement infringes upon a recipient's Fifth Amendment rights must be measured by the criteria set forth in *California v Byers* (402 US 424); these include such factors as the nature of the statute, the group from which reporting is mandated, and the necessity of self-reporting to the efficacy of the statute (see *United States v Stirling,* 571 F2d 708, 727, cert den 439 US 824; *Doe v City of Buffalo,* 84 AD2d 920). Assessment and application of these factors lead us to conclude that respondents could properly demand disclosure of all income and assets as a condition for continued ADC eligibility.

The Social Services Law and regulations are directed at ensuring that the State's limited welfare resources are allocated to those most in need (*New York Dept. of Social Servs. v Dublino,* 413 US 405, 413). Essentially, the statutory plan involved is regulatory, not criminal. Indeed an eligibility determination is regulatory and nonprosecutorial in nature. Its purpose is to ascertain the extent of the applicant's privation; it is not a subterfuge for a criminal prosecution (*Matter of Brown v Lavine,* 37 NY2d 317, 321). In addition, the reporting directive, far from being offensively selective, is neutral, applying as it does to all beneficiaries of public assistance. And considering that any interference with the self-reporting requirement threatens both the integrity and the continued operation of the system, it can hardly be disputed that there is a compelling State interest in obligating recipients to fully and completely reveal their finances. Moreover, meeting this impartial requirement does not confront the average recipi-

ent with a substantial risk of self incrimination. That disclosures by Mrs. Gilbert concerning the $800 check may have linked her to criminal activity did not relieve her of the duty, attendant upon every other ADC recipient in the State, to supply the Department of Social Services unimpaired financial information.[1]

To complete this balancing of the public's need for disclosure against the individual recipient's claim to constitutional protection, recognition must be accorded the fact that welfare benefits are not a fundamental right (*Lavine v Milne,* 424 US 577, 584, n 9, *supra*). Coupling this factor with the general, noncriminal character of the reporting mandate and the necessity that it be complied with if the system is to function, we conclude that though Mrs. Gilbert had the right to invoke her constitutional privilege, she still was obliged to advise the local agency respecting her income and resources so that it could determine her financial eligibility. When that information was not forthcoming, termination of public assistance was appropriate.

While it is true that the *Garrity v New Jersey* (385 US 493) line of cases forbade imposition of substantial penalties on one choosing to exercise his right against self incrimination, there, however, the refusal to disclose arose in the context of an official prosecutorial-type inquiry and bore on the loss of one's livelihood. Not only was there no effort on respondent's part to coerce Mrs. Gilbert into informing against herself, but what the local agency sought was compliance by a welfare recipient who, it must be remembered, carries the burden of establishing eligibility for public assistance in every regard, with a generally applicable, relatively minimal, self-reporting requirement. It is also noteworthy that the decision to discontinue bene-

---

1. Objections similar to those raised by Mrs. Gilbert have often arisen in the context of the financial disclosure mandated by the Internal Revenue Code. In *United States v Ward* (448 US 242, 258-259) Justice STEVENS (dissenting on other grounds) stated the general rule with respect to tax disclosures: "when the general income tax laws require a full reporting of each taxpayer's income in order to fulfill the Government's regulatory objectives, the fact that a particular answer may incriminate a particular taxpayer is not a sufficient excuse for refusing to supply the relevant information required from every taxpayer." (See *United States v Oliver,* 505 F2d 301, 308 [STEVENS, J.].) *Garner v United States* (424 US 648) is not to the contrary as long as the compelled disclosure, like the one here, is "fundamental to a neutral reporting scheme" (*supra,* at p 662, n 16).

fits here does not appear to be solely and automatically due to Mrs. Gilbert's silence.[2]

As respondent's determination that petitioners were ineligible for public assistance from November 16, 1980 to December 30, 1980 is supported by substantial evidence, it must be confirmed. From the evidence in the record, including the Gilberts' refusal to request a conference during the period in question and the fact that Mrs. Gilbert had retained an attorney to represent her in the criminal proceeding, respondent's conclusion that Mrs. Gilbert would not have discussed the check was reasonably inferable.

The determination should be confirmed, and the petition dismissed, without costs.

MAHONEY, P.J., MIKOLL and LEVINE, JJ., concur.

Determination confirmed, and petition dismissed, without costs.

---

[2]. The existence of the check went a long way in itself toward justifying the termination decision. Moreover, respondent's determination might also be confirmed on the grounds that it is permissible to draw an adverse inference from the invocation of the right to remain silent when the proceeding is administrative in nature and there exists other evidence to support the inference (*Baxter v Palmigiano,* 425 US 308; *Arthurs v Stern,* 560 F2d 477, cert den 434 US 1034).