**CHILDRENS AND PARENTS RIGHTS ASSOCIATION OF OHIO, INC., (CAPRA), Plaintiff,**

v.

**Louis W. SULLIVAN, et al., Defendants.**

**No. 4:90 CV 297.**

United States District Court, N.D. Ohio, E.D.

Feb. 20, 1992.

Robert M. Fertel and Sanford J. Berger, Berger & Fertel, Cleveland, Ohio, for plaintiff.

Lynne H. Buck, Michael Anne Johnson, Office of the U.S. Atty., Cleveland, Ohio, Karen Lee Lazorishak, Office of the Ohio State Atty. Gen., Columbus, Ohio, Robert K. Coulter, Dept. of Justice, Tax Div., Washington, D.C., Loren L. Braverman, Shawn H. Nau, Office of the Atty. Gen., Columbus, Ohio, Steven D. Bell, Janik & Bell, Cleveland, Ohio, David J. Betras, Law Office of David J. Betras and Stuart–Banks, Youngstown, Ohio, for defendants.

## ORDER

BATTISTI, District Judge.

The Court has already dismissed Defendants Ohio Department of Human Service and Judge John H. Leskovyansky, and granted summary judgment for defendant Louis W. Sullivan, Secretary of the Department of Health and Human Services (HHS), on most of the issues presented in this litigation. Order of December 11, 1991, 787 F.Supp. 724. The Court also heard oral argument on the remaining issue of due process and now grants summary judgment for HHS.

The background of the federal child support statutes and regulations was provided in detail in the earlier order. 787 F.Supp. at 726–27.[1] As previously explained, the present system for determining child support has evolved over the past two decades as a response to widespread dissatisfaction with erratic and occasionally unreasonable results obtained in the absence of clear federal and state policies. The requirement of specific and numeric guidelines and the use of rebuttable presumptions represent only a start and will bear further improvement. But this approach cannot be said to violate due process.

Plaintiff CAPRA has relied on precedents concerning both due process in general and the use of presumptions in particular. Neither area of case law adequately supports its claim that federal child support statutes and regulations fail to comport with constitutional due process.

## I. DUE PROCESS

In a case considering whether an evidentiary hearing was required before termination of Social Security benefits, the Supreme Court has stated the test for determining whether a procedure which results in loss of property comports with due

---

1. Although the Court held that Plaintiff lacked standing to pursue its claims against the state Defendants, and found that Plaintiff possessed standing only insofar as it was challenging the federal scheme for child support, in the course of oral argument, Plaintiff referred to provisions of the Ohio guidelines as an example. It is nevertheless clear that Plaintiff has directed its argument at the requirement that the guidelines be specific and numeric, and its results be given the status of rebuttable presumptions.

These requirements derive from federal rather than state law.

During oral argument, Defendant brought to the court's attention the fact that states have adopted a wide array of guidelines. Were another plaintiff to assert that other state guidelines were within federal standards but fell below constitutional minimums, focusing on features of state rather than federal law, its arguments might require different analysis on the question of standing and on the merits.

process. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). There, the Court listed the following factors for consideration:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interests, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Id.* at 335, 96 S.Ct. at 903. Plaintiff's claim fails on both the second and third prongs of the test.

As a preliminary matter, the Court is mindful of the principle that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902 (internal quotations omitted). "What the Fourteenth Amendment does require, however, is an *opportunity* ... granted at a meaningful time and in a meaningful manner, for a hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 1158–59, 71 L.Ed.2d 265 (1982) (emphasis in original) (internal quotations omitted). *See also Yashon v. Hunt*, 825 F.2d 1016, 1022 (6th Cir.1987) (due process requirements for reviewing physician staff privileges), *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2015, 100 L.Ed.2d 602 (1988). Federal child support statutes and regulations provide for a meaningful hearing as tailored for the nature of the case.

■ The private interest involved in child support is unusual. Plaintiff has admitted that its membership has a legal obligation to pay child support. Plaintiff has boasted that its members are eager to help provide financially for their children. Thus, its argument is not that non-custodial parents are deprived of a property interest whenever they are required to pay child support, but instead that they are deprived if they are made to pay too much. An interest in being assessed a fair amount for child support is sufficient to trigger the remaining requirements for due process.

Accordingly, the Court turns to the second and third prongs of the test under *Mathews*. The risk of an erroneous deprivation is hard to measure. Inevitably, in setting child support, one or both parents will believe that the result is arbitrary. That dissatisfaction simply is not enough to establish a due process violation. Plaintiff is unable to provide more than a vague claim that its membership is subjected to overly large child support obligations. In a constitutional challenge premised on due process, a plaintiff must identify an aspect of the proceedings that failed to give them adequate notice, a meaningful hearing, or otherwise left them without recourse. In the process of setting child support levels, Plaintiff's membership benefits from notice, presence of counsel, and all the other features of a full hearing. Indeed, given that the challenged statute and regulation require an opportunity to rebut the presumptions obtained from use of state guidelines, a judicial proceeding on child support offers much more of an opportunity to be heard as the administrative procedures at issue in *Mathews*. If Plaintiff's membership, or parties adverse to them, wish to present mitigating factors or direct the state court's attention to expenses that the guidelines do not take into account, they may do so. Furthermore, Plaintiff has not suggested any additional or substitute procedures that would provide any better method for setting child support.

Were Plaintiff to prevail, then the effect in cases with which Plaintiff finds fault would be to shift the burdens of proof and persuasion from the non-custodial parent onto the custodial parent. The Constitution does not require that, where both parents concededly must pay some portion of child support, one rather than the other bear the burden of going forward to show an appropriate amount. In the absence of a Constitutional directive, Congress has

chosen to allocate the burden, and it has not done so beyond the bounds of reason.

Finally, Plaintiff cannot gainsay the government interest in ensuring that, following a divorce, children benefit from child support provided by the non-custodial parent. The legislative history provides ample reason for developing a policy of child support, at both federal and state levels. *See* Order of December 11, 1991, 787 F.Supp. 724.

## II. PRESUMPTIONS

In essence, Plaintiff argues that a due process violation arises when the guideline results are given presumptive value. As the case law has emphasized, however, a legislative decision to create just this type of presumption is given deference, and the presumption at issue easily passes constitutional muster.

■ Plaintiff cannot expect that the standards governing presumptions in a criminal context will be applicable in a civil proceeding. The Supreme Court, in upholding a presumption that an individual who voluntarily ended his employment within seventy-five days of applying for welfare benefits did so for the purpose of obtaining such benefits, made it clear that, "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." *Lavine v. Milne*, 424 U.S. 577, 585, 96 S.Ct. 1010, 1016, 47 L.Ed.2d 249 (1976). *See also* E. Cleary, *McCormick on Evidence*, § 345 at 985–87 (3rd ed. 1984). Rather, the appropriate inquiry is whether a rational connection exists between the fact proved and the ultimate fact presumed. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 28, 96 S.Ct. 2882, 2898, 49 L.Ed.2d 752 (1976).

Again, the standards for evaluating presumptions are not perfectly suited for evaluating child support decisions. However, taking some measurement of income as the fact proved, regardless of whether that is a gross or net figure, and the level of child support as the ultimate fact presumed, the Court holds that it is rational to use the former in setting the latter. A failure to consider income in setting child support would be irrational. The same method of calculating income is used for both parents; thus, whatever presumptions are applied will affect them in a like manner. Moreover, Plaintiff has not shown that any difficulties peculiar to child support determinations prevent its membership from rebutting the presumption.

The Court is aware of the realities of judicial decision-making, but it cannot assume that state court judges will fail to provide non-custodial parents with an opportunity to overcome the rebuttable presumption. Plaintiff CAPRA has not provided any reason for concluding that, in the abstract, state courts will fail to meet Constitutional standards either intentionally or through inadvertence. In concrete cases, where an improper procedure is followed, the appeals process represents the appropriate method for correcting problems. *See Agg v. Flanagan*, 855 F.2d 336 (6th Cir.1988).

In conclusion, the motion for summary judgment filed by Defendant HHS, previously GRANTED with regard to issues 1 through 11, also is GRANTED as to issue 12.

IT IS SO ORDERED.