Florence McLAUGHLIN et al.,
Plaintiffs,

v.

Helene WOHLGEMUTH et al.,
Defendants.

No. 74-1692.

United States District Court,
E. D. Pennsylvania.

July 25, 1975.

---

James G. Gavin, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Howard M. Holmes, Asst. Atty. Gen., State of Pa., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

This suit challenges the legality of §§ 3234.6 and 3234.61 of the Pennsylvania Department of Public Welfare's Public Assistance Manual (hereinafter P.A. Manual). These provisions are part of the regulatory system used by the Department of Welfare (hereinafter DPW) to compute the cash assistance available to applicants under the Federal Aid to Families with Dependent Children Program (hereinafter AFDC). Sections 3234.6 and 3234.61 provide for a conclusive presumption that the income of a legally responsible relative is available to dependents living in the same assistance unit.[1] The plaintiffs argue that this conclusive presumption violates the federal Social Security Act, HEW regulations, the due process and equal protection clauses of the Fourteenth Amendment, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. The plaintiffs have filed motions for summary judgment and for certification of this suit as a class action and the defendant has responded with a motion to dismiss plaintiffs' complaint.

### I. Factual Background

The parties have stipulated that the named plaintiffs in this action, Mrs. Florence McLaughlin and Mrs. Artie Brown, are participants in the AFDC assistance program. This program provides authority for the appropriation of federal monies for the care of children who have "been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent." 42 U.S.C. § 606(a). The amount of cash assistance available to families under the AFDC program depends, in part, on the amount of income available to the applicants from other sources.

The named plaintiffs in this action have been receiving AFDC assistance for a number of years. Prior to November of 1973, DPW, in computing the plaintiffs' income, assumed that the plaintiffs were receiving no income other than their AFDC assistance. However, in the latter part of 1973, DPW re-evaluated the plaintiffs' income level and determined that the assistance unit was receiving additional unreported income. Accordingly, Mrs. McLaughlin's assistance for herself and her nine minor children was reduced by $95.40 per month, and Mrs. Brown's assistance for herself and her three minor children was reduced by $101 per month.

The additional unreported income which led to the reductions in AFDC assistance consisted of income received by the plaintiffs' spouses. Plaintiff McLaughlin's spouse worked as a part time bus driver, and plaintiff Brown's husband received monthly Veteran's Administration checks. DPW, in accordance with P.A. Manual §§ 3234.6 and 3234.61, concluded that the Brown and McLaughlin AFDC assistance should be reduced to reflect the income of the spouses since it appeared that (1) the men were "legally responsible relatives," and (2) they were occupying a common dwelling with the AFDC recipients.[2]

1. Although there are numerous exceptions in the regulations, a "legally responsible relative" is defined as a husband, wife, child, father, or mother. Pa. Manual § 1412 incorporating 62 P.S. § 1973. An applicant is considered to be living with a "legally responsible relative" "if he and the relative occupy a common dwelling." The applicant is regarded to be living with the relative even if he/she is residing elsewhere for purposes such as employment, hospitalization, or institutionalization. P.A. Manual § 3234.60.

2. Although apparently incongruous, a "legally responsible relative" under Pennsylvania law can be considered "continually absent" from the home, so as to qualify his family for eligibility in the AFDC program, while at the same time deemed to be "living with" his family for purposes of computing the assistance unit's income pursuant to P.A. Manual

The named plaintiffs appealed this decision and administrative hearings were conducted. The evidence at both hearings tended to show that while the plaintiffs' husbands were receiving income, this income was not made available to the family unit. In fact, the hearing examiner in the McLaughlin review specifically found that Mrs. McLaughlin's husband "refuses to give this [money] to the family but he continues to live with them." However, both hearing examiners computed the applicants' income in accordance with P.A. Manual §§ 3234.6 and 3234.61 and determined that the unavailability of the spouses' income for use by the family unit was not a factor for consideration. They concluded that once it was determined that there was a "legally responsible relative" occupying a common dwelling with the applicant, as they found in *Brown* and *McLaughlin,* the husbands' income had to be included in calculating the income of the household. Accordingly, the hearing examiners affirmed the legality of the DPW reduction in AFDC assistance.

## II. *Jurisdiction*

■ The plaintiffs brought this action under 42 U.S.C. § 1983 and invoked the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(3) and (4). They contend that P.A. Manual §§ 3234.6 and 3234.61 violate the due process and equal protection clauses of the Fourteenth Amendment. Furthermore, they argue that these regulations are inconsistent with the federal Social Security Act and HEW regulations thereunder, and are therefore invalid by virtue of the Supremacy Clause of the United States Constitution. Obviously, any consideration of the merits of the constitutional

claim would require the convening of a three-judge court. On the other hand, plaintiffs' "statutory claim"—the alleged conflict between state and federal law—could be properly decided by a single judge.

In *Hagans v. Lavine,*[3] the Supreme Court held that the following procedures should be used by a federal court when faced with statutory and constitutional challenges to the validity of state AFDC regulations. First, the lower federal courts are instructed to determine if the constitutional claim has sufficient substance to support federal jurisdiction pursuant to 28 U.S.C. § 1343. If the court finds that there is a substantial federal question raised, the court has jurisdiction over the cause of action, and may also hear, as a matter of pendent jurisdiction, plaintiffs' allegations that the State regulations are invalid because they conflict with federal law. In order to avoid reaching the constitutional issues and the necessity of convening a three-judge court, the Supreme Court directs the lower federal courts to adjudicate the possibly dispositive pendent "statutory" claims before dealing with the constitutional questions. If the single judge rejects the statutory claim, a three-judge court must be called to consider the constitutional question.

I have concluded that the plaintiffs have raised a substantial constitutional question and that jurisdiction lies in this Court pursuant to 28 U.S.C. § 1343(3). The complaint in this action clearly alleges a deprivation, under color of state law, of the plaintiffs' constitutional rights. The plaintiffs contend that their Fourteenth Amendment right to procedural due process is violated by the DPW's conclusive presumption that

---

§§ 3234.6 and 3234.61. For instance, at the time plaintiff's Brown's AFDC assistance was reduced, her husband was in jail. Although the circumstances rendered Mr. Brown "absent from the home" for purposes of establishing AFDC eligibility, he was still considered to be "occupying a common dwelling" with his family for purposes of computing the family's income in accordance with

the P.A. Manual regulations. This follows from the provision in § 3234.6 that the "relative is regarded to be living with the applicant even if he is "residing elsewhere for purposes such as . . . institutionalization."

3. 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

a "legally responsible relative," occupying a common dwelling with the AFDC recipients, will contribute his/her income to the maintenance of the assistance unit. Their position in this respect is strongly supported by the recent opinion in *Hurley v. Van Lare*, 380 F.Supp. 167 (S. & E.D.N.Y.1974) (three-judge court), affirmed on other grounds *Van Lare v. Hurley, et al.*, 421 U.S. 338, 95 S. Ct. 1741, 44 L.Ed.2d 208 (1975). In *Hurley*, AFDC recipients challenged a New York state regulation which automatically reduced aid to families with dependent children if the recipient houses a noncontributing "lodger." In holding that this regulation violated the due process clause of the Fourteenth Amendment, the court stated that:

> "The state may not conclusively presume that a lodger will pay his share of the rent . . . merely because ethically he should or theoretically he could. . . . Federal law prohibits a conclusive presumption of support. . . . Irrebuttable presumptions are offensive to due process because they effectively deny an individual the essential procedural right to challenge the purported factual basis of a determination adversely affecting his own liberty or property. In this case, the 'property' right in question is the AFDC recipient's statutory entitlement to a shelter allowance commensurate with actual need. . . . Before reducing the shelter allowance of a recipient family because the family houses a non-contributing lodger, the state must make an individualized determination of whether the presence of the lodger does in fact diminish the family shelter needs. If presumptions are used, they must be rebuttable." *Hurley v. VanLare*, 380 F.Supp. at 175.

The rationale of the *Hurley* decision is consistent with the recent trend of authority voiding irrebuttable presumptions when the presumption is not necessarily true in fact and when the state has "alternative means of making the crucial determination." *Vlandis v. Kline*, 412 U.S. 441, 452, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63 (1973) (irrebuttable presumption of non-residency of student invalidated); *see, also, e. g., Stewart v. Wohlgemuth*, 355 F.Supp. 1212 (W.D. Pa.1972) (irrebuttable presumption terminating welfare benefit of college student violative of due process); *Boucher v. Minter*, 349 F.Supp. 1240 (D.Mass. 1972) (three-judge court) (irrebuttable presumption terminating shelter allowances where step-father lives in the same house violative of due process); *Owens v. Parham*, 350 F.Supp. 598 (N. D.Ga.1972) (three-judge court) (irrebuttable presumption that the members of a household bear a *pro rata* share of expenses violates the due process clause). The defendants have not cited a single case in which an irrebuttable presumption affecting an individual's liberty or property rights has withstood a challenge on due process grounds, and my research has failed to disclose any cases favorable to the defendants' position that there is no substantial constitutional question raised.

After surveying the pertinent case law, I find that the plaintiffs' due process argument raises a substantial constitutional issue and that the jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1343(3). However, I wish to emphasize that I do not rule on the substance of the constitutional claims and will consider only plaintiffs' allegation that the Pennsylvania AFDC regulations are inconsistent with applicable federal law.

### III. *Certification of the Class*

■ The plaintiffs have made a timely motion to certify this case as a class action pursuant to Rule 23(a) and Rule 23(b)(2). The proposed class would consist of all "past, present, and future public assistance applicants and recipients in the Commonwealth of Pennsylvania· whose public assistance has been or will be denied in whole or in part, reduced, or terminated because they are to

be considered living with a legally responsible relative who receives an income." The plaintiffs have defined their proposed class to include all instances in which the Commonwealth of Pennsylvania might determine, by applying P.A. Manual §§ 3234.6 and 3234.61, that a "legally responsible relative who receives income" is living with a public assistance applicant.

I have concluded that the requirements of Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure have been met. In reaching this decision, I cite with approval the district court opinion in *Rodriguez v. Swank*, 318 F.Supp. 289 (M.D.Ill.1970), *aff'd* 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971). In *Rodriguez*, the district court was presented with a similar suit challenging certain AFDC regulations, and the court held that class action treatment was appropriate for the following reasons:

"For present purposes the court can take judicial notice that the number of AFDC recipients in Illinois runs well into the thousands, thus making joinder of class members impracticable. . . . Second, there are questions of law common to the classes, such as interpretation of the binding nature of the HEW regulations, and determination of the constitutionality of the Illinois regulations. Third, the claims of the representative parties are typical of the class. The named plaintiffs' interest in this litigation differs from that of the class members only in the amount of retroactive payment . . . and arguments can be expected to be representative of the class. . . . In addition . . . a class action must also meet one of the criteria set out in Rule 23(b). Rule 23(b)(2) requires that . . . the complaint charges that the defendants have failed to act promptly [to pay retroactive benefits to AFDC recipients]. This alleged failure is due in part to the command of the challenged [state] regulations,

which applies to all class members. Thus, the defendants have acted on 'grounds generally applicable to the class.' And final injunctive and declaratory relief is sought." *Rodriguez v. Swank, supra*, at 294.

The defendants argue that the proposed class, consisting of all AFDC recipients "living with a legally responsible relative who receives an income," is too broad. They argue that both named plaintiffs are adversely affected by income received by their "husbands," that "husbands" is only one of the five subclasses included within the statutory definition of "legally responsible relatives," and that the class should be narrowed to include only those AFDC applicants living with a husband receiving an income.

While narrowing the class might be permissible, and indeed appropriate, there appears to be no compelling reason for taking the proposed action at this time. The conclusive presumption that the plaintiffs seek to invalidate is based solely on one criterion, the receipt of income by a legally responsible relative living in the assistance unit. This conclusive presumption operates uniformly, without regard to the identity of the legally responsible relative receiving the income. Therefore, the failure of these plaintiffs to exemplify each subclass within the Pennsylvania definition of "legally responsible relative" is irrelevant. *Jenkins v. Georges*, 312 F.Supp. 289 (W.D.Pa.1969) (three-judge court); *Rodriguez v. Swank, supra*, at 294.

However, I do feel that defining the class as including all "public assistance applicants and recipients" may be overly broad. The Social Security Act establishes many different public assistance programs including programs to aid the blind, the physically or mentally disabled, and the aged. The AFDC program is only one of many assistance programs. Each program has separate statutory and regulatory provisions. Although it appears that the claims of the representative parties (AFDC recipients) are

typical of the claims of the proposed class (all public assistance recipients), there may be reasons for differentiating between the AFDC program and the other Social Security Act programs. If, in the context of the issues raised in this litigation, the defendants can suggest a reason for further narrowing the proposed class, they may move to divide the proposed class into subclasses pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure.

### IV. *The Defendants' Motion to Dismiss*

The defendants have filed a motion to dismiss plaintiffs' complaint. The thrust of defendants' argument is that the plaintiffs have incorrectly interpreted the Social Security Act and the HEW regulations thereunder. For the reasons stated in Part V of this Opinion, I find that the plaintiffs have correctly interpreted the applicable law.

■ However, while the defendants have not addressed themselves to this issue, the plaintiffs' prayer for retroactive payment of AFDC payments wrongfully withheld must be dismissed. Regardless of my views on the merits of plaintiffs' contention it is clear that there is no jurisdiction in this Court to order the Commonwealth to return federal disability payments to welfare recipients. *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman*, the Supreme Court found that state officials had illegally deprived welfare recipients of benefits due under a Social Security Act program, but refused to order the retroactive payment of the benefits. The Supreme Court held that the Eleventh Amendment barred suits by private parties seeking to impose a liability payable from public funds, unless the state consents to be sued.

■ The Commonwealth did not "constructively consent" to be sued merely by participating in a federal Social Security program which is partially funded by the Federal Government. *Edelman v. Jordan, supra*. The Supreme Court has held that a state should be deemed to have waived its Eleventh Amendment protection only where the waiver is stated "by the most express language or by such overwhelming implications from text as will leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). In this action, there is no evidence to support the conclusion that the Commonwealth of Pennsylvania has waived its Eleventh Amendment sovereign immunity. Therefore, this Court finds that the claim asserted in subparagraph 45(d) of plaintiffs' complaint, seeking retroactive payment of wrongfully withheld AFDC payments, is barred by the Eleventh Amendment and the motion to dismiss is granted as to this prayer for relief.

### V. *Plaintiffs' Motion for Summary Judgment*

■ The Commonwealth of Pennsylvania participates, on a matching fund basis, in the federal AFDC program, established by the Social Security Act of 1935, 42 U.S.C. § 601 *et seq.* By participating in the AFDC program, the Commonwealth has agreed to administer its state assistance program in accordance with the provisions of the Social Security Act and the Department of Health, Education & Welfare (HEW) regulations interpreting the Act.[4] The Secretary of HEW has exercised this power of control over state AFDC programs by promulgating guidelines which restrict the control the participating states have over the administration of local AFDC programs. The question raised in this

4. In *King v. Smith*, 392 U.S. 309, 333, 88 S. Ct. 2128, 2141, 20 L.Ed.2d 1118 (1967), the Supreme Court stated that the Federal Government "may impose the terms and conditions upon which its money allotment to the States [under the AFDC program] shall be disbursed."

motion for summary judgment is whether §§ 3234.6 and 3234.61 of the Pennsylvania Department of Public Welfare's Public Assistance Manual conflicts with pertinent HEW guidelines.

As was stated above, §§ 3234.6 and 3234.61 provide for a conclusive presumption that the income of a legally responsible relative is available to dependents living in the same assistance unit. The legally responsible relative is considered to be living with the AFDC applicant "if he and the relative occupy a common dwelling," even if that relative is residing elsewhere for purposes such as employment, hospitalization, or institutionalization. P.A. Manual § 3234.60. Plaintiffs argue that these Pennsylvania regulations conflict with the HEW guidelines set forth in 45 C.F.R. § 233.-20. In particular, § 223.20(a)(3)(ii)(c) outlines how participating states are to compute the income available to the assistance unit, and provides that:

> "Only such net income as is *actually available* for current use on a regular basis will be considered, and only currently available resources will be considered." (Emphasis added.)

This HEW regulation would appear to preclude a state from enforcing a regulation which provides for a conclusive presumption that certain income is available to the assistance unit. However, the defendants argue that the effect of this regulation, as it relates to the income received by parents of AFDC recipients, is modified by 45 C.F.R. § 233.20(a)(3)(VI), which provides that:

> "In family groups living together, income of the spouse is *considered available* for his spouse and income of a parent is *considered available* for children under 21." (Emphasis added.)

Obviously, there is an apparent conflict between these two HEW regulations. Although 45 C.F.R. § 233.-20(a)(3)(VI) appears to permit, if not require, a state to "consider available" for use of a welfare recipient all of the income received by a spouse or parent who is living in the public assistance unit, that method of computing the assistance unit income appears to violate § 233.20(a)(3)(ii)(c)'s mandate that only "actually available" income should be considered available. This seeming inconsistency is further complicated by a third HEW regulation, 45 C.F.R. § 233.-90(a), which provides that:

> "In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the [natural parent, adoptive parent, and to some extent step-parents] will be *considered available* for children in the household in the absence of proof of actual contributions." (Emphasis added.)

Interpreting these HEW regulations, and analyzing the effect of the federal mandate on the challenged Pennsylvania regulations, requires an inquiry into two related areas of concern. First, and most importantly, this Court must determine the meaning of the federal requirement that a state "consider available" certain income. Second, since the federal regulations provide that the income of a parent or spouse may only be "considered available" where the "family group [is] living together," this Court must determine if the Commonwealth's definition of individuals considered to be "occupying a common dwelling" is overly broad.

### A. *The Meaning of "Consider Available"*

As a general rule, both the HEW regulations and pertinent case law have required the states, in computing the income available to a family receiving public assistance, to ascertain each family's income on an individualized basis, without resorting to unnecessary presumptions. The Supreme Court first discussed the importance of computing the public assistance unit's income on an individual basis in *King v. Smith*, 392 U.S.

309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1967), wherein the Court stated that:

"Regulations of HEW, which clearly comport with the statute, restrict the resources which are to be taken into account under § 602 to those that are, in fact, available to an applicant or recipient for current use on a regular basis . . . . This regulation properly excludes from consideration resources which are merely presumed to be available to the needy individual." *King v. Smith, supra,* at 319, 88 S.Ct. at 2134.

Numerous federal courts have invalidated state welfare regulations on the ground that the regulations fail to compute the actual income available to the assistance unit. For instance, in *Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L. Ed.2d 561 (1970), the Supreme Court, relying on their earlier opinion in *King v. Smith, supra,* held that a state may not presume that a child's resources include the income of a man assuming the role of spouse. The *Lewis* decision has frequently been invoked by lower federal courts to invalidate state statutes which reduce the AFDC grant to reflect the support supposedly provided by a "step-father" or "man in the house."

In fact, the rationale advanced in *King v. Smith* and *Lewis v. Martin* has recently been reaffirmed by the Supreme Court in *Van Lare v. Hurley, et al.*[5] In *Van Lare,* the Supreme Court invalidated a New York welfare regulation which provided for an automatic pro rata reduction in the AFDC shelter allowance whenever it was determined that a non-legally responsible person was

residing in the assistance unit. In reversing the Second Circuit Court of Appeals, the Supreme Court stressed that state agencies, in computing the assistance unit's income, must consider only the "bread [that is] actually set on the table." Since the New York regulations conclusively presumed that the non-paying lodger was contributing to the welfare household, without inquiring into whether he in fact did so, the Supreme Court concluded that the regulations violated federal law.[6]

There is a great similarity between the facts of this case and the facts presented in the Supreme Court cases discussed above. Initially, it should be noted that the plaintiffs in this action have two crucial characteristics in common with the plaintiffs in the *Van Lare* and *Lewis* cases: (1) All plaintiffs were properly receiving AFDC assistance pursuant to 42 U.S.C. § 606, and (2) all plaintiffs had their assistance reduced to reflect the income of a third party, regardless of whether that person actually contributed to the maintenance of the AFDC assistance unit. In fact, the only major difference between this case and the previous Supreme Court cases which have discussed the AFDC program is the identity of the "third party" whose income results in the reduction of AFDC assistance. In *Van Lare* and *Lewis,* and their progeny, the AFDC assistance was reduced to reflect the income of a "lodger" or "man in the house" while in our case, the third party income is directly attributable to a "legally responsible relative" who is living with a child who is receiving AFDC as-

---

5.  421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975).

6.  In another recent decision, the Supreme Court interpreted the meaning of the words "take into consideration" in the context of 42 U.S.C. § 602(a)(7) which provides that a state agency, in computing the welfare household's income, must deduct expenses incurred in earning the income. The State of Colorado argued that the federal requirement that the state "take into consideration . . . the expenses reasonably attributa-

ble to the earning of . . . income" was satisfied by the use of a statistical average of the actual expenses of all AFDC participants in the state. The state's procedure utilized a fixed work expenses allowance without taking into consideration the actual expenses of the AFDC recipient. The Supreme Court held that this procedure violated federal law because Congress intended local welfare agencies to consider the individual factors present in each case in determining actual income and consequently the amount of AFDC assistance needed.

sistance. It is apparently the defendants' position that the distinction between a "lodger" and a "legally responsible relative" is so complete and absolute that the rationale of *Van Lare* and *Lewis*, and their discussion of 45 C.F.R. § 233.20, is completely irrelevant in the context of this case.

Although the Commonwealth has not done so in this case, the State could advance compelling public policy reasons for distinguishing between the income earned by "legally responsible relatives" and income earned by a "lodger" who is not related to the family receiving AFDC assistance. However, the Commonwealth still must comply with the requirements of the HEW regulations, and I have concluded that these regulations prohibit the type of conclusive presumption provided for in P.A. Manual §§ 3234.6 and 3234.61. In reaching this decision, I rely principally on 45 C.F.R. § 233.90(a) which specifically provides that the income of parents "will be considered available for children in the household *in the absence of proof of actual contributions*." (Emphasis added.) While this language could be interpreted as permitting a state to establish a conclusive presumption that certain income is available to the assistance unit, it appears more reasonable to construe the regulation as permitting only a rebuttable presumption that the parent's income is available to the welfare household.

This analysis of the HEW regulatory scheme, as applied to the income available to "legally responsible „relatives," is also supported by the provisions found at 45 C.F.R. § 233.20(3)(ii). That regulation specifically provides that a state, in administering its public assistance program, must insure that "[DPW] policies assure that when support payments by absent parents have been ordered by a court, a regular amount of income is available monthly to meet the determined needs of the mother and children, whether or not the support payments are received regularly, and the agency does

not delay or reduce public assistance payments on the basis of assumed support of applicant and recipients." This regulation, by prohibiting a conclusive presumption that a father will comply with a court order requiring him to support his family, is consistent with my position that a state may not conclusively presume that the income of an absent father or spouse is in fact available to his/her family.

It is my belief that the conclusion reached above is consistent with the HEW regulations and pertinent Supreme Court case law, both of which require participating states to consider only income "actually available" to the assistance unit. The challenged Pennsylvania regulations, which are aimed at attempting to force "legally responsible relatives" to fulfill their support responsibilities, actually result in needy children being deprived of necessary support because of their parent's irresponsibility. In this respect, the following passage from the Supreme Court's opinion in *Van Lare v. Hurley, supra* at 347, 95 S.Ct. at 1748, 44 L.Ed.2d at 216, is especially relevant:

> "The only victim of the state regulations is thus the needy child who suffers reduced benefits. But States may not seek to accomplish policies aimed at lodgers by depriving needy children of benefits (citations omitted)."

Similarly, the Commonwealth may not seek to indirectly enforce the Pennsylvania support statutes in a manner which results in depriving needy children of their AFDC benefits. *Cf.* 45 C. F.R. § 233.20(3)(ii).

B. *When is the "Family Group" Living Together?*

■ The second possible conflict between the state and federal regulations is related to the federal requirement that the income of parent or spouse may only be "considered available" where the "family group [is] living together."

The Pennsylvania regulations have interpreted the meaning of "family group living together" as including those situations where the spouse or parent is "occupying a common dwelling" with the public assistance recipient. The pertinent Pennsylvania provision provides that:

"The applicant or recipient is considered to be living with his spouse, parent or child if he and the relative occupy a common dwelling unit. If the spouse/parent is not estranged or legally separated from the recipient and he is residing elsewhere for purposes such as employment, hospitalization, institutionalization or the like, the relative is regarded to be living with the applicant or recipient." P.A. Manual § 3234.6.

The issue posed by this regulation is whether a state may construe a "family group living together" as including spouses or parents who are "residing elsewhere for purposes such as employment, hospitalization, institutionalization or the like."

The problems posed by P.A. Manual § 3234.6 are typified by the situation faced by plaintiff Brown. Plaintiff Brown's husband was in jail at the time her public assistance was reduced to reflect her husband's Veterans Administration income. In her uncontested affidavit, plaintiff Brown stated that she received her husband's Veterans Administration check, forwarded it to her husband at the Philadelphia House of Corrections, and never received any part of the proceeds of the check. Yet, the hearing examiner concluded that, despite Mr. Brown's institutionalization, he was still occupying a common dwelling unit with the welfare recipient because he "continued to sleep and eat (in the common dwelling unit) intermittently and keeps his clothes and personal possessions in the household." In addition, the hearing examiner relied on the fact that "he has shown no indication of having established another residence or of having definitely abandoned his own household." Therefore, his income was "considered available" to the assistance unit.

It is my feeling that the Secretary of HEW did not intend to include within the scope of 45 C.F.R. §§ 233.-90(a)(3)(VI) and 233.90(a) those parents or spouses who are "residing elsewhere [not in the assistance unit] for purposes such as employment, hospitalization, institutionalization or the like." The State's duty to ascertain the actual income available to the assistance unit is especially acute in those instances where the parent is not a full time occupant of the welfare household. I cannot ignore those instances, typified by *Brown,* where a child's assistance is reduced to reflect income which was never actually received. This type of result is totally inconsistent with the Congress' paramount goal of establishing the public assistance program to insure that the basic needs of public assistance recipients are met.

Therefore, I have concluded that where a spouse or parent is not actually residing in the assistance unit, he/she is not a member of the "family group living together." In this situation, the State must ascertain the actual income currently available to the assistance unit. Although I realize that there may be circumstances which justify a state's determination that an absent parent or spouse is a member of the "family group living together," these circumstances must be specified with greater clarity than is evident in P.A. Manual § 3234.6. Accordingly, I have concluded that the income of a public assistance unit does not include the income of an absent parent or spouse, except to the extent that that parent or spouse actually contributes to the maintenance of the assistance unit on a regular basis.