626 F.2d 1084
 Bertha RIDDICK, Individually and on behalf of Lulu Riddick,
an infant, and on behalf of all others similarly
situated, Plaintiffs-Appellees,
v.
Joseph D'ELIA, Commissioner of the Nassau County Department
of Social Services, and Barbara Blum, as
Commissioner of the New York State
Department of Social Services,
Defendants,
Barbara Blum, Defendant-Appellant.
 No. 855, Docket 79-7802.
 United States Court of Appeals,
Second Circuit.
 Argued March 13, 1980.
Decided May 15, 1980.
 
 1
 Marian B. Scheuer, Asst. Atty. Gen., New York City, Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Sol. Gen., New York City, for defendant-appellant Blum.
 
 
 2
 Ira S. Schneider, Baldwin, N. Y., Leonard S. Clark, Hempstead, N. Y., for plaintiff-appellee Nassau/Suffolk Law Services Committee, Inc.
 
 
 3
 Before LUMBARD and MANSFIELD, Circuit Judges, and BARTELS, District Judge.*
 
 BARTELS, District Judge:
 
 4
 Appellee Bertha Riddick brought this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief from the New York State practice of attributing a portion of a mother's federal Old Age, Survivors' and Disability Insurance ("OASDI") benefits as income to her minor daughter for the purpose of reducing the child's need for Aid to Families with Dependent Children ("AFDC") benefits. Riddick alleged that the state policy violated due process and conflicted with federal law governing OASDI. Jurisdiction was predicated upon 28 U.S.C. § 1343(3) and (4).
 
 
 5
 Both Joseph D'Elia, as Commissioner of the Nassau County Department of Social Services, and Barbara Blum, in her capacity as Commissioner of the New York State Department of Social Services, were named defendants in the action below. The District Court granted appellee's motion for summary judgment, permanently enjoining the state's practice, and Barbara Blum has appealed.
 
 
 6
 The appeal presents two questions: (1) whether appellee's constitutional claim is sufficiently substantial to support the exercise of federal jurisdiction under 28 U.S.C. § 1343(3); and, if so, (2) whether the state's treatment of a portion of the OASDI benefits paid to a mother's representative payee as available income for purposes of calculating her minor child's entitlement to AFDC benefits, conflicts with the Social Security Act, 42 U.S.C. §§ 401 et seq. and regulations promulgated thereunder.
 
 
 7
 AFDC is a federal-state benefit program designed to provide financial assistance to needy dependent children and their parents or relatives who live with or care for them. 42 U.S.C. §§ 601 et seq.; 45 CFR §§ 233.10 et seq. Under federal law, each state participating in the AFDC program "shall, in determining need, take into consideration any other income . . . of any child or relative claiming aid to families with dependent children." 42 U.S.C. § 602(a)(7). An applicant's eligibility and the amount of assistance granted are based on a comparison of a public assistance standard of need, 18 NYCRR §§ 352.1 et seq., with the income and resources "actually available (to the applicant) for current use on a regular basis." 45 CFR § 233.90(a)(1).
 
 
 8
 * The facts are not in dispute. Bertha Riddick and her husband, Eugene, reside in Hempstead, New York with their 37 year-old, mentally-disabled daughter, Constance, and with Constance's 7 year-old daughter, Lulu. Bertha has received a monthly AFDC grant on Lulu's behalf since June 1, 1977. Constance is entitled to federal OASDI payments because of her disabling mental illness, but her father, Eugene, is the representative payee for the OASDI payments pursuant to 20 CFR §§ 404.1601 et seq. These regulations require Eugene to expend Constance's payments "for the purposes determined by him to be in (her) best interest." 20 CFR § 404.1603. A willful conversion of such monies to a use other than "for the use and benefit" of Constance would expose Eugene to criminal liability under 42 U.S.C. § 408(e). He is authorized, however, to apply some of the OASDI benefits to the support of Constance's legally dependent child if Constance's "maintenance needs . . . are being reasonably met." 20 CFR § 404.1607.
 
 
 9
 Until April 1978, the monthly AFDC grant for Lulu was in the amount of $212.30, but in that month Bertha received notice from defendant D'Elia that, effective April 24, 1978, the payment would be reduced to $143.90. The appellant recomputed Lulu's grant because the Department of Social Services had discovered that Constance was the beneficiary of a monthly OASDI payment of $189.10.[1] According to the state public assistance standard of need set out in 18 NYCRR §§ 352.1 et seq.,[2] Constance only required $166.50 for herself, so the balance, $22.60, was deemed available to Lulu, whose AFDC grant was reduced accordingly.[3]
 
 
 10
 On April 19, 1978, Bertha requested a fair hearing to review the AFDC reduction. At the hearing, on May 23, 1978, Bertha's and Eugene's uncontradicted testimony indicated that all of the OASDI money for Constance was being used for Constance's needs, and there was no surplus available for Lulu. While Constance spent something over a dollar a day on personal expenses, mostly cigarettes, Bertha testified that she dipped into her own funds to help buy Constance's clothes. Defendant offered no evidence that Constance did not need for herself all of her OASDI grant, but instead took the position, as the hearing officer summarized it, of "relying on the public assistance budget, and they (the Department of Social Services) don't go into actual needs." The determination to reduce Lulu's AFDC grant was affirmed by Barbara Blum, Commissioner of New York State Department of Social Services, on June 27, 1978 and the reduction took effect on July 1, 1978, This action was commenced on July 31.[4]
 
 
 11
 The District Court held it had jurisdiction under 28 U.S.C. § 1343(3) because the appellee's claim raised a question under the Due Process Clause of the Fourteenth Amendment, and then proceeded to adjudicate the pendent statutory claim in favor of appellee, on the ground that the state practice was invalid under the Supremacy Clause, thus avoiding the constitutional issue on the merits.
 
 II
 
 12
 It is axiomatic that under 28 U.S.C. § 1343(3), federal jurisdiction in this case must be based upon a noninsubstantial claim of deprivation of a "right . . . secured by the Constitution of the United States." It is equally undisputed that such a claim may not be predicated upon a mere conflict between state and federal statutes. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). As the District Court analyzed the state practice, Lulu's AFDC payments were being reduced as a result of an irrebuttable presumption that Eugene would use no more of the OASDI funds he received for Constance than necessary to meet New York's public assistance standard of need as set forth in 18 NYCRR §§ 352.1 et seq., and that he would make the surplus above such standard available to Lulu.
 
 
 13
 With this background in mind we must first decide whether the application of this presumption in appellee's case raises a constitutional question sufficiently substantial to support federal jurisdiction under 28 U.S.C. § 1343(3). Our answer depends upon the criteria set out in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), where the Supreme Court said:
 
 
 14
 " 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' (cit. omit.); 'obviously frivolous,' (cit. omit.); and 'obviously without merit,' (cit. omit.). The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; . . . only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' " (cit. omit.).
 
 
 15
 Id. at 537-38, 94 S.Ct. at 1379.
 
 
 16
 Viewing such prior decisions, in a number of cases the Supreme Court has struck down on constitutional grounds legislation embodying conclusive presumptions not justified by the facts or by general experience. United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (conclusive presumption that certain food stamp applicants are not needy); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (conclusive presumption of non-residency of university students who applied from out-of-state); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1971) (conclusive presumption that unwed father is unfit for custody of child); Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (conclusive presumption that school teacher is unfit to teach after fourth month of pregnancy). The Seventh Circuit found that substantial constitutional allegations were made in plaintiffs' attack on Indiana medicaid regulations which conclusively presumed the income of one spouse to be available to the other. Brown v. Stanton, 617 F.2d 1224, 1226 n.1 (7th Cir. 1980). In Gagne v. Maher, 594 F.2d 336, 341 (2d Cir. 1979), --- U.S. ----, 100 S.Ct. 2570, 65 L.Ed.2d 653, this court recently held that a due process claim alleging that certain aspects of Connecticut's AFDC program embodied impermissible irrebuttable presumptions did raise a substantial constitutional question within the meaning of Hagans v. Lavine, supra. See also Caldwell v. Blum, 621 F.2d 491 at 494 (2d Cir. 1980).[5]
 
 
 17
 On the other hand, as Judge Mansfield points out in his dissent, the Supreme Court has upheld against constitutional attack welfare classifications, standards of need and presumptions, provided they have a rational basis, Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); Califano v. Jobst, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977); Califano v. Aznavorian, 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978), recognizing that there is no constitutional entitlement to any particular level of welfare benefits. Lavine v. Milne, 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976), and that individualized hearings are not always feasible, Califano v. Jobst, supra; Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); Weinberger v. Salfi, supra.
 
 
 18
 From the above authorities, it would not be surprising if the appellee's constitutional argument failed on the merits. But we cannot look at the fate of a claim on the merits to decide the threshold question of jurisdiction. Hagans teaches that a constitutional claim cannot be deemed too insubstantial to support federal jurisdiction unless it is virtually certain from prior Supreme Court cases arising out of a substantially similar context that the claim has no hope of success. We applied the Hagans test in Holley v. Lavine, 529 F.2d 1294 (2d Cir. 1976), reversing the dismissal of a complaint alleging that provisions of New York State's AFDC program discriminated against illegal aliens in violation of the Equal Protection Clause. There we said:
 
 
 19
 The Supreme Court has apparently never dealt with the equal protection rights of illegal aliens in this context . . . We do not characterize plaintiff's constitutional arguments as persuasive; we hold merely that the district judge could not dismiss them out of hand.
 
 
 20
 Id. at 1295-96.
 
 
 21
 Judge Mansfield argues that the constitutional claim is insubstantial because it is patently rational for the legislature to balance household income against presumed expenses to determine whether a child of that household is eligible for aid. He suggests that it is no problem for a state to presume that the income of a natural parent, whether or not he actually supports the children, will be deemed to be available to the children, citing King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) and Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). To these principles we agree without, however, agreeing to Judge Mansfield's conclusion. King and Lewis do imply that the mother's income may be deemed available to her child because the parent is under a duty to support the child. But it does not follow that Eugene, the representative payee for the parent Constance, who must apply the OASDI payments for Constance's needs, is under any legal duty to support Constance's child Lulu. The use of Constance's income by the representative payee for her "best interest," 20 CFR § 404.1603, does not require this conclusion. Neither of the above authorities apply an irrebuttable presumption fixing the needs of an OASDI beneficiary at public assistance levels. Because of the legally enforceable fiduciary obligation of the representative payee, the presumption of available income for Lulu is not so patently rational and constitutional as to require dismissal at the threshold. Consequently, these authorities do not foreclose appellee's constitutional challenge.
 
 III
 
 22
 We, therefore, turn to the pendent statutory claim challenging the state practice as contrary to federal law and regulations governing OASDI. Appellant contends that the state policy is mandated by federal law and regulations requiring it to consider the income of a mother living with her minor child as available to the minor child for the purpose of computing entitlement to and level of AFDC benefits. 42 U.S.C. § 602(a)(7); 45 CFR § 233.20(a)(3)(vi).[6] In support of her claim she points out that the federal statute directing states to consider applicants' income in setting the level of AFDC benefits explicitly excludes Supplementary Security Income ("SSI") but not OASDI benefits from such consideration. 42 U.S.C. § 602(a)(24).
 
 
 23
 In its opinion, the District Court relied principally on 20 CFR § 404.1603, which provides that the representative payee shall "apply the payments certified by him on behalf of a beneficiary only for the use and benefit of such beneficiary in the manner and for the purposes determined by him to be in the beneficiary's best interest." (Emphasis supplied.) As earlier indicated, the failure to use the payments for this purpose can expose the representative payee to criminal liability for conversion. 42 U.S.C. § 408(e). The allocation by the Department of Social Services of a portion of Constance's OASDI benefits to Lulu effectuated an irrebuttable presumption that Eugene would expend that portion for Lulu in spite of the fact that Eugene was obligated to use all of such income for Constance if her "best interest" so required.
 
 
 24
 In a similar context this court upheld the representative payee's broad discretion to expend OASDI benefits in the beneficiary's interest in the face of a Connecticut policy of imputing such benefits to other family members for purposes of calculating their entitlement to AFDC. Johnson v. Harder, 512 F.2d 1188 (2d Cir.), cert. denied, 423 U.S. 876, 96 S.Ct. 149, 46 L.Ed.2d 109 (1975). Appellant's argument that federal law explicitly provides for disregard of SSI but not of OASDI income in setting the level of AFDC grants carries little weight, in view of 20 CFR § 404.1607, which authorizes, but does not require the representative payee to use part of the OASDI benefits for the support of a legally dependent child "(i)f current maintenance needs of a beneficiary are being reasonably met." In view of such a conflict with federal law, the state policy must give way under the Supremacy Clause.
 
 
 25
 Affirmed.
 
 LUMBARD, Circuit Judge (concurring):
 
 26
 I concur in affirming the judgment of the district court.
 
 
 27
 First, the district court had jurisdiction. Appellee's constitutional claim was "substantial" under Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), because previous decisions do not foreclose the claim that the New York practice complained of is not rationally related to a legitimate state interest, and because that policy, whose effect is to take from Lulu Riddick an amount that, in fact, she may not receive from Eugene Riddick, is not "so patently rational as to require no meaningful consideration." Id. at 541, 94 S.Ct. at 1381. Thus, the claim was of sufficient substance to justify the district court in taking jurisdiction, even though a further and fuller consideration would probably reveal that the claim has no merit, as the state statute does have a rational relation to a reasonable and economic operation of the state's welfare system.
 
 
 28
 Second, the district court was therefore required to determine the claim that the state practice conflicted with the federal statute and its regulations. I agree with Judge Bartels that the district court was correct in holding that a conflict existed and that the state must be enjoined from reducing the allowance for Constance Riddick.
 
 MANSFIELD, Circuit Judge (dissenting):
 
 29
 I respectfully dissent for the reason that the constitutional claim asserted by plaintiffs is so patently insubstantial as to deprive federal courts of subject matter jurisdiction. See Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).
 
 
 30
 We have pendent jurisdiction over plaintiffs' statutory claim only if plaintiffs' constitutional claim raises substantial questions under 28 U.S.C. § 1343(3). Under Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), a constitutional claim is insufficiently substantial to confer federal court jurisdiction if the result is "immediately obvious from the decided cases" or if the challenged law is so "patently rational as to require no meaningful consideration." Id. at 538-41, 94 S.Ct. at 1380-81. In my view, it is "patently rational" to presume, as did the State here, that a portion of the income of a parent will be available for the use and benefit of that parent's minor child.
 
 
 31
 As the majority indicates, AFDC is a federal-state cooperative program designed to provide financial assistance to needy dependent children and their parents or relatives who live with or care for them. A state participating in the AFDC program will typically determine a public assistance standard of need, which is the level of income the state believes is necessary to maintain a hypothetical family unit, and pay to each recipient an amount equal to that standard of need less the amount of other income and resources available to him or her. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Indeed, federal law requires that each state shall, "in determining need (of an eligible child), take into consideration any other income and resources of (the) child or relative claiming aid . . . ." 42 U.S.C. § 602(a)(7). Accordingly, the State of New York calculated the state standard of need for both mother and daughter, Constance and Lulu, and "deemed" the difference between the mother's needs and income to be available to Lulu for the purpose of determining Lulu's level of AFDC benefits. The only distinguishing feature between this case and the typical AFDC case is that the mother receives her income, OASDI benefits, indirectly through her father Eugene, a representative payee.
 
 
 32
 Judge Sifton below found that the State had conclusively presumed (1) that Eugene, the representative payee for Constance's income, will not use more of Constance's income for her benefit than that necessary to meet the standard of need set by the State, and (2) that any surplus income over and above that standard of need will be used to meet Lulu's needs. Relying on such cases as Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (barring presumption of nonresidency of out-of-state applicants for admission to university); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1971) (upsetting conclusive presumption that unwed father is unfit to have custody of child); and Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (holding that automatic suspension of license of driver involved in accident denied due process), Judge Sifton concluded that these two "irrebuttable presumptions" raised sufficiently serious questions to support federal court jurisdiction under § 1343(3).
 
 
 33
 I disagree. As we recently noted in Clayborne v. Califano, 603 F.2d 372, 380 (2d Cir. 1979), the Supreme Court, in a line of cases beginning with Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1974), has all but ruled the irrebuttable presumption analysis inapplicable to social welfare cases.[1] In Weinberger v. Salfi the Court stated "There is thus no basis for our requiring individualized determinations when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce." Id. at 785, 95 S.Ct. at 2476. Given that the Supreme Court has repeatedly recognized that the constitutionality of a social welfare classification depends not on whether it constitutes an irrebuttable presumption but whether it has a "rational basis," e. g., Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), the district court erred when it simply assumed that the mere use of a conclusive presumption raises substantial constitutional questions.
 
 
 34
 The presumption challenged here, that of "deeming" income of a parent to be available to a child, is clearly rationally related to a legitimate state interest. I begin with the firmly established proposition that because there is no constitutional obligation to provide minimum levels of support, Lavine v. Milne, 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 1015, 47 L.Ed.2d 249 (1976), the states and the federal government are free to determine levels of need for welfare applicants, regardless of actual need, and may even award a level of benefits amounting to less than the state presumed standard of need. Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); King v. Smith, 392 U.S. 309, 318, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968); Dandridge v. Williams, supra; Rosado v. Wyman, supra. A legislature may, in short, conclusively presume that an applicant has needs of a certain amount without granting to the applicant an individual hearing as to those actual needs.
 
 
 35
 That is all that the State has done here. The State is legitimately concerned about the possibility of parents shielding income from their children in order to render them eligible for AFDC aid. It also desires to use limited welfare funds to assist those truly in need. Therefore it has simply balanced household income against a presumed standard of need to determine the child's eligibility and need for AFDC aid. Nothing could be more rational. Not only is it reasonable for a State to presume that parents, who are legally obligated to support their minor children, will in fact use their income to support their children, but it would be highly inefficient, prohibitively expensive, and unduly burdensome for the State to be required to determine individually on a case-by-case basis whether parents actually made their income available to their children. Quite simply, the procedure of presuming needs and "deeming" income to be available is necessary to the efficient operation of, and is relied upon by, all social welfare programs, including Supplemental Security Income (SSI) and Medicaid, see 42 U.S.C. §§ 1382(a)(2), (b)(2), 1382c(f)(1). To contend, as the majority does here, that it raises substantial constitutional questions is a proposition that has been thoroughly rejected by the Supreme Court.
 
 
 36
 Indeed, the Supreme Court, in a long line of cases, has implicitly upheld the constitutionality of "deeming." In King v. Smith, 392 U.S. 309, 329, 88 S.Ct. 2128, 2139, 20 L.Ed.2d 1118 (1968), the Court made clear that a state may under § 602(a)(7) deem the income of a natural father to be available to his child, regardless of whether or not he actually supports the child. And in Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), the Court upheld the propriety of deeming the income of a man married to the child's natural mother to be available to the child, stating:
 
 
 37
 "We only add that HEW might reasonably conclude that only he who is near as a real or adoptive father would be has that consensual relation to the family which makes it reliably certain that his income is actually available for support of the children in the household. HEW may, in other words, reasonably conclude that an obligation to support under state law must be of 'general applicability' to make that obligation in reality a solid assumption on which estimates of funds actually available to children on a regular basis may be calculated." (At 558-59, 90 S.Ct. at 1285).
 
 
 38
 Judge Bartels, though not disputing the principles announced in King and Lewis, apparently contends that the mother's receipt of her income indirectly through a representative payee in this case presents more serious constitutional questions than those raised in King and Lewis. But that fact, whatever its significance for the statutory issue presented in this case, has no constitutional significance. The duty of the representative payee to use Constance's income in her "best interests," 20 C.F.R. § 404.1603, neither relieves Constance of her statutory duty to support her child, N.Y. Social Services Law § 101, nor makes any less rational the State's presumption that Constance's income will in fact be used to support her daughter.
 
 
 39
 In upholding the constitutionality of various legislative presumptions, many of which are far more susceptible to a constitutional challenge than the presumption challenged here, the Supreme Court has repeatedly emphasized not only the power of a legislature to act on the basis of reasonable general factual inferences but also the necessity of avoiding individual case-by-case determinations. See Califano v. Aznavorian, 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978) (upholding denial of benefits based on a residency presumption); Califano v. Jobst, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1978) (upholding the presumption that a dependent child's need terminates upon marriage);[2] Mathews v. Lucas, 427 U.S. 495, 509, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976) (upholding the presumption that legitimate children, and some illegitimate children, were dependent on a deceased wage earner);[3] Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1974) (upholding the denial of benefits to the widow and survivors who had a relationship of less than nine months prior to the wage earner's death). See also Norman v. St. Clair, 610 F.2d 1228, 1242-43 (5th Cir. 1980) (upholding the constitutionality of deeming income from one spouse to be available to another for the purpose of determining Medicaid eligibility); Kollett v. Harris, 619 F.2d 134 (1st Cir. 1980) (upholding the constitutionality of deeming income of a stepparent to be available to his stepchild for the purposes of determining the child's SSI benefits even though the stepparent was not legally obligated to support the stepchild).[4]
 
 
 40
 Plaintiffs' claim is foreclosed by these prior Supreme Court decisions. There comes a point where a constitutional claim has so little hope of success that it must be considered too insubstantial to establish federal court jurisdiction. This is such a case.
 
 
 41
 Finally, it should be noted that requiring plaintiffs to litigate their statutory claim in state court is not an empty promise. The New York courts have been a sympathetic forum for claims of this sort. Snowberger v. Toia, 60 A.D.2d 783, 400 N.Y.S.2d 648, aff'd, 46 N.Y.2d 803, 413 N.Y.S.2d 922, 386 N.E.2d 833 (1978).
 
 
 42
 Accordingly, I would dismiss the case for lack of subject matter jurisdiction.
 
 
 
 *
 Of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 As of the time of the summary judgment below, these benefits had been increased to $201.00
 
 
 [2]
 The computations were as follows: Constance's and Lulu's basic needs were computed to be $150.00 ($75.00 each), which is the basic monthly grant for a household of two pursuant to 18 NYCRR § 352.2. Their shelter allowances were computed to be $78.50 each, which was 1/4 of the $314.00 actual mortgage payments for the Riddick household. 18 NYCRR § 352.3(c). Their fuel-for-heating allowance was computed to be $13.00 each: 1/4 of the scheduled monthly allowance for a household of four using natural gas on an eight-month basis in Nassau County. 18 NYCRR § 362.5, Schedule SA-6b. The sum of these allowances was computed to be $166.50 each. See Affidavit in Opposition to Plaintiff's Motion for a Preliminary Injunction, Appendix at 79-81
 
 
 [3]
 Lulu's AFDC grant was also reduced due to a recalculation of her own standard of need for reasons that are not here in issue
 
 
 [4]
 The district court granted a temporary restraining order restraining defendants from reducing the AFDC payments, and that order has been extended by consent of the parties pending disposition of this action
 
 
 [5]
 The lower courts have regularly entertained constitutional attacks on state welfare programs which conclusively presumed that certain income was available to the applicant. Manfredi v. Maher, 435 F.Supp. 1106 (D.Conn.1977); Franssen v. Juras, 406 F.Supp. 1375 (D.Or.1975) (three-judge court); McLaughlin v. Wohlgemuth, 398 F.Supp. 269 (E.D.Pa.1975), vacated on other grounds, 535 F.2d 251 (3d Cir. 1976); Johnson v. Harder, 383 F.Supp. 174 (D.Conn.1974), affirmed on statutory grounds, 512 F.2d 1188 (2d Cir. 1975); Smith v. King, 277 F.Supp. 31 (M.D.Ala.1967) (three-judge court), affirmed on statutory grounds, sub nom. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1978)
 
 
 [6]
 45 CFR § 233.20(a)(3)(vi) provides in pertinent part that a state plan must:
 if the State agency holds relatives responsible for the support of applicants and recipients, (a) include an income scale for use in determining whether responsible relatives have sufficient income to warrant the expectation that they can contribute to the support of applicants or recipients, which income scale exceeds a minimum level of living and at least represents a minimum level of adequacy that takes into account the needs and other obligations of the relatives . . . In family groups living together, income of the spouse is considered available for his spouse and income of a parent is considered available for children under 21.
 
 
 [1]
 The equal protection doctrine is available today only when the legislative classification may be violative of equal protection, such as where a fundamental interest is at stake or where the classification involves a suspect or semi-suspect class like race, gender, age or alienage. Clayborne v. Califano, 603 F.2d 372 (1974); Tribe, American Constitutional Law § 16-32 at 1095 (1978). The interest at stake here, a non-contractual claim to receive funds from the public treasury, is not constitutionally protected since the government is free to award any level of benefits it sees fit. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Lavine v. Milne, 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 1015, 47 L.Ed.2d 249 (1976); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1974)
 
 
 [2]
 The Court, in upholding the presumption, stated:
 "Nor has Congress made actual dependency on the wage earner either a sufficient or a necessary condition of eligibility in every case. Instead of requiring individualized proof on a case-by-case basis, Congress has elected to use simple criteria, such as age and marital status, to determine probable dependency. A child who is married or over 18 and neither disabled nor a student is denied benefits because Congress has assumed that such a child is not normally dependent on his parent. There is no question about the power of Congress to legislate on the basis of such factual assumptions. General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seeming arbitrary consequences in some individual cases. Weinberger v. Salfi, 422 U.S. 749, 776, 95 S.Ct. 2457, 2472, 45 L.Ed.2d 522." Califano v. Jobst, supra, at 52-53, 98 S.Ct. at 98-99 (emphasis supplied).
 
 
 [3]
 In upholding the presumption as rational, the Court stated:
 (The presumption enabled Congress) to avoid the burden and expense of specific case-by-case determination in the large number of cases where dependency is objectively probable. Such presumptions in the aid of administrative functions, though they may approximate, rather than precisely mirror, the results that case-by-case adjudication would show, are permissible under the Fifth Amendment, so long as that lack of precise equivalence does not exceed the bounds of substantiality tolerated by the applicable level of scrutiny. See Weinberger v. Salfi, 422 U.S. 749, 772, 95 S.Ct. 2457, 2471, 45 L.Ed.2d 522 (1975). " Mathews v. Lucas, supra, at 509, 96 S.Ct. at 2764.
 
 
 [4]
 The burden and inefficiency involved in individualized case-by-case determination of need is evidenced in the present case by the fact that some of the OASDI benefits paid to Constance's representative payee were used to buy her cigarettes and silk stockings rather than to support her child Lulu. This illustrates the nice question that would be faced in a case-by-case approach of whether all or part of the excess over the state's standard of need should be spent on necessities for the benefit of the child rather than upon items of doubtful need for the mother